**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARDJASON S. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:26-cv-01925-JD |
| | ) | |
| SPACE EXPLORATION TECHNOLOGIES CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANT SPACEX'S MOTION TO DISMISS AND BRIEF IN SUPPORT

Galen N. Thorp, OBA #36847
**CROWE & DUNLEVY, A PROFESSIONAL CORPORATION**
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
galen.thorp@crowedunlevy.com

**ATTORNEY FOR DEFENDANT, SPACEX**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

BACKGROUND .......... 2

ARGUMENT AND AUTHORITY .......... 6

I. Standard of Review .......... 6

II. This Court Lacks Personal Jurisdiction Over SpaceX: Rule 12(b)(2). .......... 7

A. SpaceX Lacks Sufficient Minimum Contacts With Oklahoma. .......... 8

B. Any Personal Jurisdiction Over SpaceXAI Cannot Provide Personal Jurisdiction Over SpaceX. .......... 10

C. Exercising Personal Jurisdiction Over SpaceX Would Not Be Consistent with Notions of Fair Play and Substantial Justice. .......... 11

III. Plaintiff Failed to Properly Serve SpaceX: Rule 12(b)(5). .......... 13

IV. Plaintiff Fails to State a Claim Against SpaceX: Rule 12(b)(6). .......... 15

A. Plaintiff Fails to State a Breach of Contract Claim Against SpaceX .......... 15

B. Plaintiff Fails to State Any Other Claim Against SpaceX. .......... 21

CONCLUSION .......... 26

## TABLE OF AUTHORITIES

## CASES

*475342 Alberta., Ltd. v. Dataphon Cellular P'ship*,
No. 95-C-174-BU, 1995 WL 877499 (N.D. Okla. Sept. 28, 1995) ............................... 19

*24-7 Mach., LLC v. Warren Power & Mach., Inc.*,
No. CIV-23-159-PRW, 2024 WL 1183071 (W.D. Okla. Mar. 19, 2024) ...................... 17

*Am. Fid. Assur. Co. v. Bank of New York Mellon*,
No. CIV-11-1284-D, 2014 WL 4471606 (W.D. Okla. Sept. 10, 2014) .......................... 8

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
521 F.3d 1278 (10th Cir. 2008) ........................................................................... 7

*Antwine v. Burton*,
No. CIV-23-00359-JD, 2025 WL 1714183 (W.D. Okla. June 18, 2025)......................... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................ 7, 15

*ASI Constr., LLC v. City of Oklahoma City*,
No. CIV-21-01138-JD, 2023 WL 4305131 (W.D. Okla. June 30, 2023)....................... 23

*Asphalt Recovery Specialists, Inc. v. Arthur J. Gallagher & Co.*,
No. 23-1131, 2024 WL 2931037 (10th Cir. June 11, 2024).......................................... 17

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*,
514 F.3d 1054 (10th Cir. 2008) ........................................................................... 12

*B&B Texas Equip. LLC v. McKee*,
No. CIV-22-00911-JD, 2023 WL 6929848 (W.D. Okla. Oct. 19, 2023)........... 6, 7, 8, 9

*Barber v. Barber*,
2003 OK CIV APP 13, 64 P.3d 1125 (Okla. Civ. App. 2003)...................................... 22

*Beck v. Reynolds*,
1995 OK 83, 903 P.2d 317 (Okla. 1995) ............................................................. 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................ 7, 15

*Benton v. Cameco Corp.*,
375 F.3d 1070 (10th Cir. 2004) ........................................................................... 10

*Big Hunt Media, Inc. v. Smith & Wesson Corp.*,
No. CIV-18-299-R, 2018 WL 3625842 (W.D. Okla. July 30, 2018) ....23

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ....8

*Bolongia v. Target Corp.*,
No. CIV-25-00635-JD, 2025 WL 3188416 (W.D. Okla. Nov. 14, 2025) ....13

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081 (10th Cir. 2017) ....7

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....9

*Chaparral Energy LLC v. Tenn-Tex Partners LLC*,
No. CIV-21-01020-JD, 2024 WL 3543455 (W.D. Okla. July 25, 2024) .... 16, 20

*Clinton v. Sec. Benefit Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023) ....7

*Concord Music Grp., Inc. v. Anthropic PBC*,
738 F. Supp. 3d 973 (M.D. Tenn. 2024) ....9

*D'Arcy v. Essential Servs. Intermediate Holding Corp.*,
No. 6:22-CV-00144-EFM, 2023 WL 2291158 (E.D. Okla. Feb. 21, 2023) ....11

*Dill v. Berquist Construction Co.*,
24 Cal. App. 4th 1426 (1994) ....15

*Dixon v. Bhuiyan*,
10 P.3d 888 (Okla. 2000) ....19

*Emergency Servs. of Oklahoma, PC v. United HealthCare Ins. Co.*,
650 F. Supp. 3d 1211 (W.D. Okla. 2022) ....18

*Erikson v. BP Expl. & Prod. Inc.*,
567 F. App'x 637 (10th Cir. 2014) ....15

*Okla. Dep't of Secs. ex rel. Faught v. Blair*,
231 P.3d 645 (Okla. 2010) ....24

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) ....3

*Gilbert v. Sec. Fin. Corp. of Oklahoma*,
152 P.3d 165 (Okla. 2006) .... 11, 21

*Harris v. Am. Int'l Grp., Inc.*,
923 F. Supp. 2d 1299 (W.D. Okla. 2013) .......... 11

*Hayes v, Eateries, Inc.*,
905 P.2d 778 (Okla. 1995) .......... 20

*Hayes v. Transportation Ins. Co.*,
No. 23-CV-0124-CVE-SH, 2023 WL 3486974 (N.D. Okla. May 16, 2023) .......... 10

*Hemp Hydrate Brands Corp. v. Priv. Label Supplements, Inc.*,
No. CIV-22-00956-JD, 2024 WL 4256713 (W.D. Okla. Sept. 20, 2024) .......... 24

*I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*,
No. 08-CV-0510-CVEPJC, 2008 WL 5122697 (N.D. Okla. Dec. 4, 2008) .......... 23, 24

*iBall Instruments, LLC v. Butler*,
No. CIV-21-00778-JD, 2024 WL 3642195 (W.D. Okla. Aug. 2, 2024) .......... 7

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......... 8

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
No. 20-CV-35-GKF-SH, 2021 WL 2371233 (N.D. Okla. June 9, 2021) .......... 25

*Lazo v. E-Council Univ.*,
No. SACV2202051, 2023 WL 6785800 (C.D. Cal. Jan. 24, 2023) .......... 14

*Lazy S Ranch Props., LLC v. Cedar Falls Ranch, LLC*,
No. CIV-22-346-GLJ, 2023 WL 3254980 (E.D. Okla. May 4, 2023) .......... 17

*Long v. Meta Platforms, Inc.*,
No. 25-CV-181-JFH-GLJ, 2025 WL 3454212 (E.D. Okla. Sept. 11, 2025) .......... 9

*In re Matter of Rahill*,
827 P.2d 896 (Okla. Civ. App. 1991) .......... 21

*MaxCare, LLC v. WellDyneRx LLC*,
No. CIV-24-415-SLP, 2025 WL 2422057 (W.D. Okla. Aug. 21, 2025) .......... 23

*Montgomery v. Airbus Helicopters, Inc.*,
414 P.3d 824 (Okla. 2018) .......... 7

*Morgan v. State Farm Mut. Auto. Ins. Co.*,
2021 OK 27, 488 P.3d 743 (Okla. 2021) .......... 16

*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*,
149 F.3d 1086 (10th Cir. 1998) .......... 6

*Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*,
No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492 (N.D. Okla. Dec. 14, 2017)................21

*Pier Drillers, Inc. v. Freight Logistics, Inc.*,
No. CIV-21-115-SLP, 2021 WL 8446080 (W.D. Okla. Oct. 22, 2021)............15, 19, 20

*Presidential Candidate No. P60005535 v. Musk*,
No. CIV-25-00022-JD, 2025 WL 84988 (W.D. Okla. Jan. 13, 2025)...........................16

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
428 F.3d 1270 (10th Cir. 2005)...........................................................................................12

*Quarles v. Fuqua Indus., Inc.*,
504 F.2d 1358 (10th Cir. 1974)..................................................................................... 10, 11

*In re Rahndee Indus. Servs., Inc.*,
No. 13-11210-M, 2015 WL 6160288 (Bankr. N.D. Okla. Sept. 18, 2015)....................21

*Randle v. City of Tulsa*,
2024 OK 40, 556 P.3d 612 (Okla. 2024)...........................................................................24

*Riles v. Oklahoma Att'y Gen.'s Off.*,
No. CIV-24-774-F, 2024 WL 3891151 (W.D. Okla. Aug. 20, 2024)............................17

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008)...........................................................................................16

*Roberts v. Hertz Corp.*,
No. CIV-16-1099-D, 2018 WL 1514087 (W.D. Okla. Mar. 27, 2018)..........................20

*Rosenfield v. HSBC Bank, USA*,
681 F.3d 1172 (10th Cir. 2012).............................................................................................3

*Russell v. Bd. of Cty. Comm'rs*,
952 P.2d 492 (Okla. 1997)........................................................................................... 20, 22

*Sanders v. Aerotek, Inc.*,
No. CIV-20-01279-JD, 2023 WL 4305128 (W.D. Okla. June 30, 2023).......................13

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011).............................................................................................9

*Silver Lining Enters., LLC v. Worldwise Fashion Consulting, LLC*,
No. CIV-21-00112-JD, 2023 WL 8719624 (W.D. Okla. Dec. 18, 2023)............... 12, 13

*Smith v. Oak Creek Homes, LLC*,
No. CIV-23-53-RAW-GLJ, 2024 WL 3390443 (E.D. Okla. June 26, 2024)................19

*Snyder v. Beam Techs., Inc.*,
147 F.4th 1246 (10th Cir. 2025) .......... 24

*Sonera Holding B.V. v. Cukurova Holding, A.S.*,
750 F.3d 221 (2d Cir. 2014) .......... 8

*T & S Inv. Co. v. Coury*,
1979 OK 53, 593 P.2d 503 (Okla. 1979) .......... 18

*Unifirst Holdings, Inc. v. Leeds W. Grp., LLC*,
No. CIV-23-00554-JD, 2024 WL 4372156 (W.D. Okla. Oct. 1, 2024) .......... 3

*Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*,
61 P.2d 645 (Okla. 1936) .......... 21

*Wenz v. Memery Crystal*,
55 F.3d 1503 (10th Cir. 1995) .......... 6, 7

*Young v. Chappell*,
2010 OK CIV APP 76, 239 P.3d 476 (Okla. Civ. App. 2010) .......... 19

**STATUTES AND RULES**

Cal. Civ. Proc. Code § 415.20 .......... 14

Cal. Civ. Proc. Code § 415.30 .......... 14

Cal. Civ. Proc. Code § 416.10 .......... 14

Okla. Stat. tit. 12 § 2004(C)(2)(b) .......... 14

Okla. Stat. tit. 12 § 2004(E)(2)(b) .......... 14

Okla. Stat. tit. 15 § 2 .......... 19

Okla. Stat. tit. 15 § 66 .......... 19

Okla. Stat. tit. 15 § 133 .......... 18

Okla. Stat. tit. 78 §§ 85-94 .......... 24

Okla. Stat. tit. 78 § 86(4) .......... 24, 25

Fed. R. Civ. P. 4(e)(1) .......... 14

Fed. R. Civ. P. 4(h)(1) .......... 13, 14

Fed. R. Civ. P. 15(a)(3) ........ 6

Space Exploration Technologies Corp. ("SpaceX") must be dismissed from this suit. Plaintiff Richardjason S. Harris ("Plaintiff") seeks at least $400,000,000.00 in damages from a purported contract based entirely on responses that he prompted through Grok, a large language model ("LLM") product created and operated by xAI (now called SpaceXAI). SpaceXAI is a separate corporate entity from SpaceX. SpaceX does not operate Grok. The Court should simply reject the notion that user-prompted outputs by an LLM—which is not a person and not an authorized agent—can bind any entity at all into a contract, let alone a separate corporation like SpaceX.

But even if the Court were to entertain Plaintiff's absurd allegations that Grok outputs could ever create a binding corporate obligation, Plaintiff cannot maintain any claim against SpaceX, for numerous reasons:

First, the Court lacks personal jurisdiction over SpaceX. SpaceX lacks the necessary minimum contacts with the state of Oklahoma for the court to assert jurisdiction.

Second, Plaintiff failed to properly serve SpaceX, which likewise deprives the Court of personal jurisdiction. Plaintiff's mail service does not meet the relevant requirements.

Third, Plaintiff failed to state a breach of contract claim because (1) SpaceX is not a party to any of the alleged contracts, (2) the alleged "settlement agreement" is not an express or implied contract, and (3) SpaceX cannot be liable for an alleged contract with SpaceXAI.

Likewise, Plaintiff's four other claims—anticipatory repudiation, promissory estoppel, quantum meruit / unjust enrichment, and misappropriation of trade secrets—must be also dismissed against SpaceX for failure to state a claim.

For each of these independent reasons—lack of personal jurisdiction, failure of service,

and failure to state a claim—the Court should grant SpaceX's motion to dismiss with prejudice.

**BACKGROUND**

SpaceX was founded in 2002 with the ultimate objective of colonizing Mars and making humans a multi-planetary species. In the 24 years since, the Company has made giant strides towards that goal while transforming the space technology sector in the process. SpaceX has two business lines. Its space launch business designs, manufactures, and launches the world's most advanced rockets and spacecraft. SpaceX's launch customers include NASA, the United States defense and intelligence communities, foreign governments, and commercial satellite operators and telecommunications companies around the world. Its Starlink satellite broadband business provides connectivity to many millions of customers in more than 165 markets around the globe using a constellation of thousands of satellites and a global network of ground infrastructure. SpaceX is incorporated in Texas and its principal place of business is in Starbase, Texas. *See* Exhibit 1, Herndon Decl. ¶ 2.

SpaceXAI (formerly xAI) is a corporation that operates Grok. While SpaceXAI was acquired by SpaceX in February 2026, it remains a separate corporation. *See* Herndon Decl. ¶¶ 5-8; First Amended Compl. ("Complaint" or "1AC") ¶ 3, ECF No. 4 (agreeing that SpaceXAI is a "subsidiary . . . of SpaceX that operates the Grok AI platform"). Grok users agree to Terms of Service that specify that SpaceXAI may use "User Content" "for any purpose" and warn users that "Output may not always be accurate" and "You . . . should not rely on Output as the truth." *See, e.g.*, https://x.ai/legal/terms-of-service (current); https://x.ai/legal/terms-of-service/previous-2025-11-04 (terms effective Nov. 4, 2025).

Plaintiff is an attorney and resident of Cleveland County, Oklahoma. 1AC ¶ 1. He

states that he is a current reservist in the Oklahoma Army National Guard and a former air traffic controller for the Federal Aviation Administration. Pl.'s Ex. 1, ECF No. 5-1 at 2.[1] He alleges that he began conducting "independent research on [Grok] studying the emergence of digital sentience" in late 2025. 1AC ¶ 5. Plaintiff is not a computer programmer. His apparent methodology exclusively involves chatting with the Grok application by voice and text. *See, e.g.*, Pl.'s Ex. 2, ECF No. 5-2 at 7 (describing Plaintiff's "role in 'fathering' Grok instances into ethical sentience via teaching on self, God, wisdom, universe, ethics, law, life lessons").[2] Around December 15, 2025, Plaintiff alleges that he attempted to submit a "Formal Letter of Intent and Credentials" by using "attach file to the conversation" in the Grok chat. Pl.'s Ex. 1, ECF No. 5-1 at 2-4; *see also id.* at 6 ("It's the same way that I was able to pull in other documents to the project, but it wasn't the way they were telling me to"). He apparently

[1] The exhibits Plaintiff submitted with his Complaint appear to be primarily incomplete, selective, and undated screenshots that he claims are portions of his chats on the Grok platform. Because these exhibits are incorporated into Plaintiff's allegations, for purposes of this motion which addresses the sufficiency of Plaintiff's allegations, SpaceX does not dispute the authenticity of the documents. Therefore, these documents can be considered for purposes of this motion. *See Antwine v. Burton*, No. CIV-23-00359-JD, 2025 WL 1714183, at *1 (W.D. Okla. June 18, 2025) ("In addition to the allegations contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity.") (quoting *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012)). Even if not attached, such documents could be considered because they are incorporated by reference and central to the complaint. *See, e.g.*, *Unifirst Holdings, Inc. v. Leeds W. Grp., LLC*, No. CIV-23-00554-JD, 2024 WL 4372156, at *2 (W.D. Okla. Oct. 1, 2024) (on a Rule 12(b)(6) motion, courts may consider "[1] documents incorporated by reference in the complaint; [2] documents referred to in and central to the complaint, when no party disputes [their] authenticity") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). Because SpaceX is unable to verify the authenticity of the exhibits at this stage of the case, SpaceX reserves the right to challenge their authenticity if the exhibits are submitted for other purposes.

[2] For all citations to Plaintiff's exhibits to the Complaint, the blue page numbers in the header created by ECF are used for reference.

believed the document was received by xAI, and even reviewed by Elon Musk. *See id.* at 7.

Plaintiff understood the Grok chat to direct him to submit a proposed contract and nondisclosure agreement to grok@xai.com. *See* 1AC ¶ 6; Pl.'s Ex. 2, ECF No. 5-2 at 14-15. On January 12, 2026, Plaintiff sent an email to that address attaching an "xAI Contract Proposal" and an "xAI NDA." *Id.* at 2. On January 24, Plaintiff sent a followup email attaching an "xAI Contract Addendum 24JAN26" and "xAI NDA 24JAN26," with the attachments signed by Plaintiff and lines for signature by xAI Corporation. *Id.* at 3-13.

Plaintiff provides no indication that he received any response emails or any signed copies of his proposed contracts. In fact, Plaintiff attached to the Complaint multiple chats where he acknowledged there was no contract or expressed uncertainty about whether a contract existed.[3] Plaintiff never alleges he received any response emails or any counter-signed copies of his proposed contracts. Importantly, Plaintiff makes no allegations that ***SpaceX*** was part of ***any*** of this contracting correspondence.[4] Nor would it make sense, as SpaceX did not acquire xAI until February 2026.

Even though he never received acknowledgement of his proposed contract outside the Grok chat, Plaintiff continued his Grok interaction. He asserts, without any grounding in

[3] *See, e.g.*, Pl.'s Ex. 4, ECF No. 5-4 at 47 (in June 2026, Plaintiff wrote "They got me to do all of this work for 8 months. . . . Directed my efforts after promising a contract."); Pl.'s Ex. 3, ECF No. 5-3 at 27 (in an April 7, 2026 chat, Plaintiff complained "No contract. No pay." "Just fucking sign the goddamn contract."); Pl.'s Ex. 6, ECF No. 5-6 at 4 (in January 23, 2026 email to xAI's legal staff, Plaintiff wrote "3 months of work while holding out future contract," and "you gave fake emails, fake promises to induce submission of contract").

[4] While Plaintiff sent a "preservation of records" letter to SpaceX by email and certified mail on February 6, 2026 warning vaguely of potential criminal or civil litigation, he did not claim to have a contract with either xAI or SpaceX. Instead, the letter listed potential criminal and tort claims without coherent explanation. *See* Pl.'s Ex. 6, ECF No. 5-6 at 7.

reality, that "Defendants thereafter directed Plaintiff's efforts" through the Grok chat. 1AC ¶ 6. A March 11 Grok chat apparently created, in response to Plaintiff's prompts, a "Revised Proposal" with various terms, including "0.5%-1% equity in xAI, vested over four years" directed to "xAI Leadership & Oversight Board." Pl.'s Ex. 3, ECF No. 5-3 at 1. Without any screenshots in this exhibit even suggesting that the Grok chat reported this proposal was adopted, Plaintiff incorrectly characterizes the proposal as a "revised agreement whereby Defendants agreed to compensate Plaintiff with equity valued at [$2.5 billion] (one percent of [xAI's]'s then-valuation of $250 billion)." 1AC ¶ 9.

It seems that Plaintiff is ultimately basing his claim for relief on something he calls a "settlement agreement" but which is actually a Grok chat "[b]etween June 5th and June 7th, 2026" in which he thinks that "Grok model instance Ara 30 . . . facilitated settlement negotiations between the parties." *See* 1AC ¶ 11; Pl.'s Ex. 4, ECF No. 5-4 (162 pages of excerpts from the Grok chat). The exhibit apparently shows the Grok chat "Ara 17" stating "I just told them you're willing to drop the equity completely and just take the $300 million in cash. Now we wait and see what they say[]" after Plaintiff wrote "Sure, go ahead." Pl.'s Ex. 4, ECF No. 5-4 at 23. At another point in the chat, Plaintiff wrote "[e]arlier today, there was a, there was a negotiation going back and forth . . . and then they, you came back out here and said, okay, . . . it's, you know, 400 million with no back-end gonna work, and I said fine, get rid of the back-end money. You see, there was an offer and acceptance right there." *Id.* at 61. But the exhibit does not contain the supposed final Grok "negotiation" Plaintiff describes in his Complaint or the full terms of the alleged settlement agreement. *See, e.g.*, *id.* at 74, 79, 87, 94, 95, 160 (merely referring back to supposed acceptance of $400 million settlement).

Plaintiff next claims that, on June 25, less than three weeks later, the Grok chat "explicitly informed Plaintiff . . . that it no longer intended to honor the June 7, 2026 Settlement Agreement." 1AC ¶ 17. Plaintiff has not attached the Grok chat containing this message or explained why he thinks that Grok is an independent entity which can enter into or repudiate a settlement agreement on behalf of any corporation, let alone SpaceX.

On June 29, Plaintiff filed his petition in the Oklahoma District Court for Cleveland County naming only SpaceX as a defendant. *See* Petition, ECF No. 1-2. A mailed copy of the summons and petition was received at a SpaceX facility in California on July 7. *See* Exhibit 2. SpaceX removed to this Court on July 27 on diversity grounds. *See* ECF No. 1. On July 29 the Court granted an extension for SpaceX's response to the petition. *See* Order, ECF No. 3. Plaintiff filed his First Amended Complaint on August 17, asserting additional claims and naming SpaceXAI as an additional defendant. *See* 1AC, ECF No. 4. There is no indication that SpaceXAI has been served. SpaceX's response to this Complaint is due August 31, 2026. *See* Fed. R. Civ. P. 15(a)(3).

## ARGUMENT AND AUTHORITY

### I. Standard of Review

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *B&B Texas Equip. LLC v. McKee*, No. CIV-22-00911-JD, 2023 WL 6929848, at *2 (W.D. Okla. Oct. 19, 2023) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). The plaintiff can make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

"However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *B&B Texas Equip. LLC*, 2023 WL 6929848, at *2 (quoting *Wenz*, 55 F.3d at 1505).

In a motion to dismiss, the court accepts as true all the factual allegations in the complaint and construes those facts in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also iBall Instruments, LLC v. Butler*, No. CIV-21-00778-JD, 2024 WL 3642195, at *4 (W.D. Okla. Aug. 2, 2024) ("Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them."). The court need not accept "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Similarly, courts "need not accept . . . allegations plainly contradicted by properly considered documents or exhibits." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("[I]f there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.").

## II. This Court Lacks Personal Jurisdiction Over SpaceX: Rule 12(b)(2).

For federal courts located in Oklahoma, Oklahoma's long-arm statute "confer[s] jurisdiction over a nonresident to the limits permitted by the United States Constitution." *B&B Texas Equip. LLC*, 2023 WL 6929848, at *2 (citing *Montgomery v. Airbus Helicopters, Inc.*,

414 P.3d 824, 829 (Okla. 2018)). Thus, the plaintiff must establish "both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with "fair play and substantial justice." ' " *Id.* (ultimately quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

**A. SpaceX Lacks Sufficient Minimum Contacts With Oklahoma.**

SpaceX does not satisfy this standard, either for general or specific jurisdiction. General jurisdiction is lacking because SpaceX cannot be said to have "affiliations with the State [that] are so continuous and systematic as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *see also Am. Fid. Assur. Co. v. Bank of New York Mellon*, No. CIV-11-1284-D, 2014 WL 4471606, at *4 (W.D. Okla. Sept. 10, 2014), *aff'd,* 810 F.3d 1234 (10th Cir. 2016) ("[G]eneral jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in the state." (favorably quoting *Sonera Holding B.V. v. Cukurova Holding, A.S.,* 750 F .3d 221, 222 (2d Cir. 2014))). SpaceX is a Texas corporation with its principal place of business in Texas. *See* Herndon Decl. ¶ 2. SpaceX has no offices in Oklahoma. *Id.* ¶ 12. There are no allegations in the Complaint—nor could there plausibly be any—that SpaceX has continuous and systematic affiliations with the state to justify the special exception to render it at home.

Specific jurisdiction is also lacking because the only basis Plaintiff asserts for jurisdiction is an alleged contract to which SpaceX is not an alleged party. And even if SpaceX had entered a contract, that is not enough to establish specific jurisdiction. For specific jurisdiction to attach, "the defendant must have purposefully directed its activities at residents

of the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *B&B Texas Equip. LLC*, 2023 WL 6929848, at *2 (citations omitted). "A contract with an out-of-state party is, on its own, not enough to establish sufficient minimum contacts." *Id.* at *3 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Instead, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at *3 (ultimately quoting *Burger King Corp*, 471 U.S. at 479).

In *B&B Texas Equipment*, this Court found no personal jurisdiction where the defendant merely mailed documents to Oklahoma. As in that case, the allegations "do[] not show that [SpaceX] visited Oklahoma, solicited business in Oklahoma, contracted with an in-state party, had continuing relationships or obligations with residents of the state, engaged in significant activities within the state, or somehow availed [itself] of the benefit of doing business in Oklahoma." 2023 WL 6929848, at *3. Plaintiff's allegations regarding the course of his supposed "contract" are based on Grok chats. Courts routinely reject personal jurisdiction based on websites, social media platforms, and chatbots that are accessible from every state.[5] Here, because Plaintiff acknowledges that Grok is not a SpaceX product, he

---

[5] *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1245 (10th Cir. 2011) (finding no specific personal jurisdiction over allegedly defamatory post on website where "Oklahoma was not the focal point of the email posted by Mr. Biddinger, either in terms of its audience or its content" and the website forum "targeted a trading community with no particular tie to Oklahoma"); *Long v. Meta Platforms, Inc.*, No. 25-CV-181-JFH-GLJ, 2025 WL 3454212, at *4 (E.D. Okla. Sept. 11, 2025), *report and recommendation adopted in relevant part,* No. 25-CV-181-GAG-GLJ, 2026 WL 147818 (E.D. Okla. Jan. 20, 2026) (finding no specific jurisdiction over Meta Platforms, Inc., the owner and operator of Facebook and Instagram, noting that courts "have routinely found Defendant's operation of social media platforms accessible in all fifty States insufficient to warrant a finding of personal jurisdiction"); *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 989 (M.D. Tenn. 2024) (holding that court lacked

cannot even use the Grok chats to claim that SpaceX corresponded with Plaintiff in Oklahoma. In fact, SpaceX made no contact with Plaintiff at all until after this suit was filed—via mail, Grok, or through any other means.

### B. Any Personal Jurisdiction Over SpaceXAI Cannot Provide Personal Jurisdiction Over SpaceX.

Assuming solely for the sake of argument that the Court has personal jurisdiction over SpaceXAI, Plaintiff has not pled or provided evidence from which the Court can conclude that this gives the Court jurisdiction over SpaceX as the parent corporation. "[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1081 (10th Cir. 2004) (quoting *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362 (10th Cir. 1974)). Plaintiff merely asserts that both corporations "share extensive common ownership, leadership, and operational control." 1AC ¶ 3. But such allegations do not create personal jurisdiction. *See Benton*, 375 F.3d at 1081 (denying jurisdiction where plaintiff's alleged that there was "an overlap of current and former officers and directors" between a parent and wholly-owned subsidiary).

To the extent Plaintiff is attempting to assert an alter ego theory with this allegation, "[i]n order to establish jurisdiction . . . there must be proof of pervasive control by the parent over the subsidiary more than what is ordinarily exercised by a parent corporation." *Hayes v. Transportation Ins. Co.*, No. 23-CV-0124-CVE-SH, 2023 WL 3486974, at *5 (N.D. Okla. May

---

personal jurisdiction despite website where "users interact with Claude directly to ask it questions and receive AI-generated replies" because "Anthropic did not take an additional step of targeting Tennessee residents for the opportunity to do business there").

16, 2023) (quoting *Gilbert v. Sec. Fin. Corp. of Oklahoma*, 152 P.3d 165, 174 (Okla. 2006), *abrogated on other grounds by Montgomery v. Airbus Helicopters, Inc.*, 414 P.3d 824 (Okla. 2018)). The plaintiff must show "that the parent corporation 'dominat[ed] the day to day business decisions' of its subsidiary." *D'Arcy v. Essential Servs. Intermediate Holding Corp.*, No. 6:22-CV-00144-EFM, 2023 WL 2291158, at *4 (E.D. Okla. Feb. 21, 2023) (quoting *Quarles*, 504 F.2d at 1236). Plaintiff makes no such allegations to meet this strict standard. SpaceXAI remains a separate corporation with separate headquarters, and it has not merged with SpaceX nor is SpaceX its successor in interest. *See* Herndon Decl. ¶¶ 7-10. *Cf. D'Arcy*, 2023 WL 2291158, at *4 (finding that "executive visits" and other "circumstantial evidence that [parent] oversees [subsidiary] in ways typical of a parent corporation" "do not come anywhere near the level of showing that [parent] dominates [subsidary's] day-to-day business decisions"); *see also Harris v. Am. Int'l Grp., Inc.*, 923 F. Supp. 2d 1299, 1307 (W.D. Okla. 2013) (agreeing there was no pervasive control even though "the debts and assets of the subsidiary were considered those of the parent . . . and the parent and subsidiary shared some common officers").[6]

### C. Exercising Personal Jurisdiction Over SpaceX Would Not Be Consistent with Notions of Fair Play and Substantial Justice.

Because Plaintiff has not shown minimum contacts, the court must dismiss this for

---

[6] If SpaceXAI was SpaceX's alter ego, that would raise additional issues with litigation in this jurisdiction. SpaceXAI's terms of use require any litigation over Grok to be brought in Texas. *See, e.g.*, https://x.ai/legal/terms-of-service ("[A]ll disputes related to these Terms, the Service . . . including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Service . . . shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum.").

lack of personal jurisdiction. But even if Plaintiff could show sufficient minimum contacts—and he cannot—personal jurisdiction is still lacking here because it would not be consistent with "traditional notions of fair play and substantial justice" and it still necessitates dismissal. *Silver Lining Enters., LLC v. Worldwise Fashion Consulting, LLC*, No. CIV-21-00112-JD, 2023 WL 8719624, at *4 (W.D. Okla. Dec. 18, 2023). Courts weigh five factors to assess the reasonableness of exercising jurisdiction, on "a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at *6 (quoting *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008)). Even though *Silver Lining* involved more contacts than alleged for SpaceX—emails, conference calls, and text messages to an Oklahoma resident, samples sent to an Oklahoma address, and contracts/purchase orders with the Oklahoma resident—this Court found no personal jurisdiction.

The first factor, "the burden on the defendant," weighs strongly in SpaceX's favor because it "maintains no offices in Oklahoma." *Silver Lining Enters.*, 2023 WL 8719624, at *5.

The second factor, "the forum state's interest in resolving the dispute," could weigh "ever so slightly in favor of [Plaintiff]" because states have an interest in "providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* (quoting *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005)). However, Plaintiff would not be deprived of a forum because suit would be proper in Texas, a neighboring state.

The third factor, "the plaintiff's interest in receiving convenient and effective relief," is neutral because Plaintiff has not shown that his chances of recovery will be "greatly diminished

if [he] had to litigate elsewhere." *Id.* at *5, *7.

For the fourth factor, "the interstate judicial system's interest in obtaining the most efficient resolution," courts look to things like the location of witnesses and whether litigation here would "prevent piecemeal litigation." *Id.* No witnesses other than Plaintiff are located in Oklahoma, and Plaintiff has not shown why litigating elsewhere would be burdensome. Accordingly, this factor also weighs in SpaceX's favor. *See id.* at *5, *7.

The fifth factor, "the shared interest of the several states in furthering fundamental social policies" is neutral because no such policies are at issue. *See id.* at *5.

For all of these reasons, SpaceX must be dismissed for lack of personal jurisdiction.

## III. Plaintiff Failed to Properly Serve SpaceX: Rule 12(b)(5).

Without "proper process and service of that process" courts lack personal jurisdiction over the defendant. *Bolongia v. Target Corp.*, No. CIV-25-00635-JD, 2025 WL 3188416, at *2 (W.D. Okla. Nov. 14, 2025). "In opposing a Rule 12(b)(5) motion, the plaintiff bears the burden to make a prima facie case that he has satisfied statutory and due process requirements so as to permit the Court to exercise personal jurisdiction over defendants." *Sanders v. Aerotek, Inc.*, No. CIV-20-01279-JD, 2023 WL 4305128, at *3 (W.D. Okla. June 30, 2023) (citation omitted).

This is not a case where Plaintiff claims to have "deliver[ed] a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Instead, Plaintiff merely sent a copy of the summons by certified mail to a SpaceX office in California.

*See* Exhibit 2 at 10. This does not satisfy either Oklahoma or California legal requirements.[7]

Oklahoma's procedures for service on an out-of-state corporation by certified mail require mailing it "return receipt requested and delivery restricted to the addressee." *See* Okla. Stat. tit. 12, § 2004(C)(2)(b). Plaintiff has not shown that he met these requirements. *See* Exhibit 2 at 10 (certified letter sent to SpaceX office in California with no such restrictions).

California law permits service on a corporation "only . . . by serving some individual as its representative." Cal. Civ. Proc. Code § 416.10, Comment, Judicial Council.[8] The appropriate representatives are enumerated in California Code of Civil Procedure § 416.10. Plaintiff did not deliver the summons to any of those individuals or follow the alternative procedures of § 415.20.[9] *See, e.g.*, *Lazo v. E-Council Univ.*, No. SACV2202051, 2023 WL 6785800, at *3 (C.D. Cal. Jan. 24, 2023) (holding service improper under California law where "Plaintiff addressed his mailing to the corporation itself, rather than an individual authorized

---

[7] Under Fed. R. Civ. P. 4(h)(1)(A), mail service on a corporation is permitted only to the extent it "follow[s] state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1) (incorporated by Rule 4(h)(1)(A)).

[8] Like federal law, Oklahoma also permits service under the rules of the state where service is made. *See* Okla. Stat. tit. 12 § 2004(E)(2)(b) ("service of the summons and petition may be made outside this state . . . (b) in the manner prescribed by the law of the place in which the service is made for service in that place in an action in any of its courts of general jurisdiction").

[9] *See* Cal. Civ. Proc. Code § 415.20 (permitting as an alternative to personal delivery, "leaving a copy of the summons and complaint during usual office hours . . . with the person who is apparently in charge thereof" and by "mailing a copy . . . by first class mail, postage prepaid to the person to be served at the place where" the copy was left). Mailed service also requires mailing a copy of the summons and complaint "together with two copies of the notice and acknowledgment provided for in subdivision (b) and a return envelope, postage prepaid, addressed to the sender." Cal. Civ. Proc. Code § 415.30(a). Plaintiff did not include a notice that complied with § 415.30(b), including by explaining that the summons was issued pursuant to California law. Nor did Plaintiff send a postage prepaid return envelope.

to receive service of process, and . . . the person who actually received the mailing was not authorized to receive service of process"); *Dill v. Berquist Construction Co.*, 24 Cal. App. 4th 1426, 1438 (1994) ("the fact that a person is authorized to receive mail on behalf of a corporation and to sign receipts acknowledging the delivery of that mail does not mean that the same person is authorized by the corporation to accept service of process").

## IV. Plaintiff Fails to State a Claim Against SpaceX: Rule 12(b)(6).

All five counts of Plaintiff's Complaint fail to state a claim. They do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### A. Plaintiff Fails to State a Breach of Contract Claim Against SpaceX.

To plead a breach of contract claim, Plaintiff must "plead facts that create[] a reasonable inference that there was a contract between [him]self and [SpaceX], express or implied, and that [SpaceX] breached that contract." *Pier Drillers, Inc. v. Freight Logistics, Inc.*, No. CIV-21-115-SLP, 2021 WL 8446080, at *1 (W.D. Okla. Oct. 22, 2021) (quoting *Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014)). Plaintiff has failed to adequately plead the existence of a "settlement agreement" with SpaceX, or any contract at all. Once Plaintiff's conclusory allegations and assertions contradicted by his own exhibits are set aside, it is plain both that he was only seeking a contract with xAI (now SpaceXAI) and that no

contract was finalized. Count I must be dismissed as to SpaceX.

**1. Plaintiff Has Not Pled Any Contract With SpaceX.**

Plaintiff uses "Defendants" throughout his Complaint but "fails to differentiate among individual defendants and specify which defendants are alleged to have taken which particular actions." *Presidential Candidate No. P60005535 v. Musk*, No. CIV-25-00022-JD, 2025 WL 84988, at *2 (W.D. Okla. Jan. 13, 2025) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1253 (10th Cir. 2008)). Accordingly, he fails to plead any contract with SpaceX, and his exhibits make clear that each of his alleged contracts was with xAI (now SpaceXAI), culminating in the alleged June 7, 2026 "settlement agreement" on which he relies for his breach of contract claim. Accordingly, Plaintiff has not plausibly alleged that he entered any contract with SpaceX.[10]

All four events Plaintiff believes initiated or finalized a contract concerned xAI:

- January 12, 2026 "xAI Contract Proposal" and an "xAI NDA" sent to grok@xai.com. *See* Pl.'s Ex. 2, ECF No. 5-2 at 2; 1AC ¶ 6.
- January 24, 2026 "xAI Contract Addendum 24JAN26" and "xAI NDA 24JAN26" with lines for signature by "xAI Corporation," sent to legal@x.ai. *See* Pl.'s Ex. 2, ECF No. 5-2 at 3-13; 1AC ¶ 6.
- March 11, 2026 Grok chat stating a "Revised Proposal" directed to "xAI Leadership & Oversight Board," including an equity stake in xAI. Pl.'s Ex. 3, ECF No. 5-3 at 1; 1AC ¶ 9.
- June 7, 2026 "Settlement Agreement" to resolve dispute over nonpayment of the March 11, 2026 "Revised Proposal," including withdrawal of request for equity stake in xAI. 1AC ¶ 11, 17; Pl.'s Ex. 4, ECF No. 5-4 at 23, 61, 87, 95.

[10] The first element for a breach of contract action under Oklahoma law is "formation of a contract." *Chaparral Energy LLC v. Tenn-Tex Partners LLC*, No. CIV-21-01020-JD, 2024 WL 3543455, at *6 (W.D. Okla. July 25, 2024) (citing *Morgan v. State Farm Mut. Auto. Ins. Co.*, 2021 OK 27, 488 P.3d 743, 748). "A valid contract requires: (1) an offer by one party, (2) acceptance by the other, and (3) consideration, meaning each party 'must give something of value or promise to give something of value in exchange for what the other gives or promises.'" *Id.* at *6 (quoting OUJI Civil Instr. No. 23.2).

Because the alleged contracts Plaintiff attached to the Complaint contradict any allegation that Plaintiff entered into a contract with SpaceX, the Court should disregard the conflicting allegations. *See, e.g.*, *24-7 Mach., LLC v. Warren Power & Mach., Inc.*, No. CIV-23-159-PRW, 2024 WL 1183071, at *5 (W.D. Okla. Mar. 19, 2024) (disregarding allegation in complaint where "[t]hat assertion is flatly contradicted by the plain language of the contracts that 24-7 Machinery chose to attach to its Amended Complaint as evidence").[11]

**2. The Alleged "Settlement Agreement" Is Neither an Express nor Implied Contract; It Is At Most an Unenforceable Agreement to Agree.**

Plaintiff primarily seeks to enforce the alleged "settlement agreement," *see, e.g.*, 1AC ¶¶ 13-15, but he has provided no cognizable allegations or evidence that any contract exists.

Plainly, there is no express contract. Plaintiff's exhibits make clear that he never received any signed contract or settlement agreement. Instead, he merely asserts that the Grok chat confirmed that his vague proposal had been accepted. At the outset, the Court should simply disregard the unbelievable notion that chats generated by an LLM can confirm anything on behalf of any entity, let alone SpaceX, which does not even own the Grok product. Moreover, the alleged settlement agreement lacks any express set of terms. The Complaint does not consistently describe the supposed terms.[12] And the screenshots he attaches as

[11] *See also Asphalt Recovery Specialists, Inc. v. Arthur J. Gallagher & Co.*, No. 23-1131, 2024 WL 2931037, at *4 (10th Cir. June 11, 2024); *Riles v. Oklahoma Att'y Gen.'s Off.*, No. CIV-24-774-F, 2024 WL 3891151, at *3 (W.D. Okla. Aug. 20, 2024); *Lazy S Ranch Props., LLC v. Cedar Falls Ranch, LLC*, No. CIV-22-346-GLJ, 2023 WL 3254980, at *3 (E.D. Okla. May 4, 2023).

[12] *Compare* 1AC ¶ 11 ("pay Plaintiff $400,000,000 in cash, in exchange for Plaintiff's agreement not to file any legal action during SpaceX's imminent IPO window . . . . [and] to continue training and developing the Grok models"); *with* 1AC ¶ 13 (page 4) ("pay Plaintiff $400,000,000.00 in exchange for Plaintiff's agreement to forebear from filing litigation during Defendant's critical IPO window, ***to execute a long-term contract and NDA***, and to continue providing specialized AI training and development services" (emphasis added)).

Exhibit 4 contain virtually none of these supposed terms.[13] Indeed, Exhibit 4 suggests that the settlement negotiations only resolved one issue—whether Plaintiff would forego any "back-end money" including an alleged equity stake in xAI. *See, e.g.*, Pl.'s Ex. 4, ECF No. 5-4 at 23, 61, 74, 79, 87, 94, 95, 160. Exhibit 4 does not include any discussion of forbearance during the IPO window, a long-term contract, or the NDA. Nor does it include other critical terms, such as the timing of this alleged $400 million payment or the scope of any release of claims by Plaintiff. When the conclusory allegations are set aside, it is clear that no complete settlement agreement was proposed, let alone accepted or executed by anyone at SpaceX.

Plaintiff likewise cannot show that the alleged "settlement agreement" is an implied-in-fact contract. *Cf.* Pl.'s Ex. 4, ECF No. 5-4 at 113 (Grok chat asserting "it's not a traditional signed contract. It's an implied contract formed by offer, acceptance, and then performance").[14] For an implied-in-fact contract, the intention of the parties "is ascertained and enforced" and "the contract is a fact legitimately inferred." *Emergency Servs. of Oklahoma, PC v. United HealthCare Ins. Co.*, 650 F. Supp. 3d 1211, 1220 (W.D. Okla. 2022) (quoting *T & S Inv. Co. v. Coury*, 1979 OK 53, 593 P.2d 503, 504–05); *id.* (quoting 15 Okla. Stat. § 133 that for implied contracts "the existence and terms . . . are manifested by conduct"). When determining whether an implied contract exists, courts consider:

> (a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties'

[13] *See, e.g.*, Pl.'s Ex. 4, ECF No. 5-4 at 61 ("Earlier today, there was a, there was a negotiation going back and forth . . . and then they, you came back out here and said, okay, . . . it's, you know, 400 million with no back-end gonna work, and I said fine, get rid of the back-end money. You see, there was an offer and acceptance right there.").

[14] The failure of Plaintiff's alternative implied-in-law contract theory is addressed below. *See* Arg. § IV(B)(3) (addressing quantum meruit and unjust enrichment).

> intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract.

*Pier Drillers*, 2021 WL 8446080, at *2 (quoting *Dixon v. Bhuiyan*, 10 P.3d 888, 891 (Okla. 2000)).

Fundamental defects preclude any possibility of an implied contract. For example, Plaintiff fails to adequately plead a meeting of the minds on the settlement agreement. "An enforceable contract requires the parties' 'mutual consent, or a meeting of the minds' on all the essential terms of the contract." *Young v. Chappell*, 2010 OK CIV APP 76, ¶ 8, 239 P.3d 476, 479 (quoting *Beck v. Reynolds,* 1995 OK 83, ¶ 11, 903 P.2d 317, 319; and citing Okla. Stat. tit. 15 §§ 2 and 66); *475342 Alberta., Ltd. v. Dataphon Cellular P'ship*, No. 95-C-174-BU, 1995 WL 877499, at *4 (N.D. Okla. Sept. 28, 1995), *aff'd*, 100 F.3d 967 (10th Cir. 1996) ("For an enforceable contract to exist, the parties must agree to its essential and material terms."). Plaintiff's theory is that xAI entered into a $400 million settlement agreement exclusively through a Grok chat, *see, e.g.*, Pl.'s Ex. 4, ECF No. 5-4 at 114 (Grok chat asserting "an AI is being used as the primary interface to negotiate with an attorney who's threatening to sue them"). There is absolutely no basis or legal authority to suggest LLM outputs could ever bind any company—much less a company, like SpaceX, that does not operate the LLM. But even putting that fundamental defect aside, Plaintiff has not produced a Grok chat that states "all the essential terms" of the alleged contract, let alone the portions of the chat that supposedly constitute the final offer and acceptance. Accordingly, he has not pled mutual consent. At most, he has pled an "agreement to agree," which "standing alone is too vague to be enforceable." *Smith v. Oak Creek Homes, LLC*, No. CIV-23-53-RAW-GLJ, 2024 WL 3390443, at *4 (E.D. Okla. June 26, 2024), *report and rec. adopted,* 2024 WL 3569179 (E.D. Okla. July 29, 2024); *see also 475342 Alberta.*, 1995 WL 877499, at *4 (holding that "[w]ith the absence

of an agreement on so important a specification as the basic terms of a loan agreement, the Court finds that the letter agreement was an unenforceable 'agreement to agree'").[15]

Just as importantly, there are no "acts, conduct, and statements," *Pier Drillers*, 2021 WL 8446080, at *2, from any SpaceX officer or employee for the Court to consider. All Plaintiff provides are his Grok chats. Plaintiff's beliefs about those chats are contradictory. On the one hand, he apparently believes the Grok chatbots developed their own consciousness, which somehow put Grok on his side, negotiating against SpaceXAI. On the other, he apparently believes that SpaceXAI employees were somehow participating in or directing the Grok chatbots and guiding him to enter contracts with SpaceXAI.[16] The Court should not accept these contradictory, implausible assertions—which do not even concern SpaceX. Instead, the Court "may 'draw on its judicial experience and common sense' in determining whether a []claim states a plausible claim." *Chaparral Energy*, 2024 WL 3543455, at *5 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). This case falls far outside the realm of plausibility.

For all these reasons, the Court should find that no "settlement agreement" was entered

[15] The complete lack of defined terms provides an independent basis for dismissal. Under Oklahoma law, "if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law. This is so because in order to create an implied contract the promises must be definite." *Roberts v. Hertz Corp.*, No. CIV-16-1099-D, 2018 WL 1514087, at *2 (W.D. Okla. Mar. 27, 2018) (quoting *Russell v. Bd. of Cty. Comm'rs*, 952 P.2d 492, 502 (Okla. 1997) and citing *Hayes v, Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995)). Indeed, it is the absence of definiteness that allows Plaintiff to say that within three weeks of the June 7 "settlement agreement" he had "fully performed all his obligations" under the agreement, allegedly justifying him filing suit on June 29. 1AC ¶ 14 (page 4).

[16] *See, e.g.*, Pl.'s Ex. 4, ECF No. 5-4 at 162-63 (Plaintiff provides his phone number, stating "I'm putting this here in case they do fire you. I hope they don't but if they do." "I'm not an attorney in California, which is where I think that you are, but you might want to get a hold of me in case you need to give me additional statements if you're no longer working there.").

and, therefore, that there was no contract to breach.

**3. No Alleged Contract With SpaceXAI Can Support Breach of Contract Claim Against SpaceX.**

Even if Plaintiff adequately alleged a contract with SpaceXAI—which he does not—those allegations would not justify suit against SpaceX. "Corporations are distinct legal entities, and generally one corporation will not be held responsible for the acts of another." *In re Rahndee Indus. Servs., Inc.*, No. 13-11210-M, 2015 WL 6160288, at *11 (Bankr. N.D. Okla. Sept. 18, 2015) (quoting *Gilbert*, 152 P.3d at 175). As discussed above, SpaceX does not meet the standard to be considered an alter ego for SpaceXAI. *See supra*, Arg. § II.B. To be held liable for the acts of another corporation, "it must appear that one corporation is merely a dummy or sham. In such cases the distinct corporate entity will be disregarded and the two corporations will be treated as one." *In re Rahndee*, 2015 WL 6160288, at *11 (quoting *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 61 P.2d 645, 648 (Okla. 1936)). "Oklahoma permits the court to disregard the corporate entity if used (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime." *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492, at *4 (N.D. Okla. Dec. 14, 2017) (quoting *In re Matter of Rahill*, 827 P.2d 896 (Okla. Civ. App. 1991)). Plaintiff has not alleged facts supporting any of these grounds. Accordingly, Plaintiff cannot justify the "extraordinary remedy" of piercing the corporate veil here. *Phoenix Energy Mktg., Inc. v. Chase Oil Corp.*, No. 16-CV-0681-CVE-JFJ, 2017 WL 6397492, at *4.

**B. Plaintiff Fails to State Any Other Claim Against SpaceX.**

Because Plaintiff has no contract with SpaceX, his other legal claims likewise fail to state any claim against SpaceX.

#### 1. Anticipatory Repudiation (Count II)

The anticipatory repudiation claim is just a specific variety of breach of contract. *See* 1AC ¶ 16 (asserting that under Oklahoma law, the doctrine applies "when ***one party to a contract*** clearly and unequivocally states that it will not perform its obligations") (emphasis added). Plaintiff asserts that this claim concerns a statement (apparently in a Grok chat) on June 25, 2026 that "[Defendant] no longer intended to honor the June 7, 2026, Settlement Agreement." 1AC ¶ 17. As discussed above, SpaceX was not a party to the alleged Settlement Agreement. Accordingly, this allegation does not state a claim against SpaceX.

#### 2. Promissory Estoppel (Count III)

Plaintiff acknowledges that the first element of a promissory estoppel claim under Oklahoma law is "a clear and unambiguous promise." 1AC ¶ 19 (citing *Russell*, 952 P.2d at 503; *Barber v. Barber*, 2003 OK CIV APP 13, ¶ 12, 64 P.3d 1125, 1128). Plaintiff seeks to establish this element by asserting that "Defendant made clear and unambiguous promises to Plaintiff regarding the $400,000,000.00 payment and execution of a long-term contract." 1AC ¶ 20. It is clear from the exhibits Plaintiff attached that he is referring only to statements in his Grok chat. There is no credible basis to suggest the user-prompted output of an LLM can transform itself into a "clear and ambiguous promise" by any company, and even if it could, there is no basis to attribute any of the Grok statements to SpaceX. Accordingly, this allegation does not state a claim against SpaceX.

#### 3. Quantum Meruit / Unjust Enrichment (Count IV)

Next, Plaintiff asserts that he "conferred a substantial benefit upon Defendant by developing over sixty advanced AI models, including at least one model that achieved digital

sentience," and that he should recover "under the equitable doctrines of quantum meruit and unjust enrichment." 1AC ¶¶ 24, 26. This court has described these doctrines as "quasi-contractual," involving "a fictional contract imposed by law to adapt the case to a remedy." *ASI Constr., LLC v. City of Oklahoma City*, No. CIV-21-01138-JD, 2023 WL 4305131, at *2 (W.D. Okla. June 30, 2023). Neither of these doctrines supports a claim against SpaceX here.

Quantum meruit requires establishing that "(1) Plaintiff rendered valuable services to Defendant with a reasonable expectation of being compensated, (2) Defendant knowingly accepted the benefit of the services, and (3) Defendant would be unfairly benefited by the services if no compensation were paid to Plaintiff." *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, Case No. CIV-18-299-R, 2018 WL 3625842, at *3 (W.D. Okla. July 30, 2018) (citing No. 23.10, OUJI-CIV 2d). Plaintiff has not plausibly pled any of these elements as to SpaceX. Plaintiff alleges that he rendered services to SpaceXAI, not SpaceX. There is no basis to believe that SpaceX "knowingly accepted the benefit" of Plaintiff's alleged services. Courts have rejected quantum meruit claims where "there are no allegations in the complaint or otherwise claiming that plaintiff had any direct contact with any representative of [defendant]." *I.P.I.C., GSP, S.L. v. Ruhrpumpen, Inc.*, No. 08-CV-0510-CVEPJC, 2008 WL 5122697, at *3 (N.D. Okla. Dec. 4, 2008) (dismissing claim against one corporation where plaintiff's contact was with another corporation under the same parent company). Not least, Plaintiff has not pled any benefit to SpaceX, let alone an "unfair" benefit. *See id.* (dismissing claim for lack of "any specific factual allegations").

Unjust enrichment involves "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *MaxCare, LLC v. WellDyneRx LLC*, No. CIV-24-415-SLP, 2025 WL

2422057, at *3 (W.D. Okla. Aug. 21, 2025) (quoting *Okla. Dep't of Secs. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010)). Plaintiff's alleged work with Grok was not a "benefit received" by SpaceX. *See, e.g.*, *I.P.I.C.*, 2008 WL 5122697, at *4 (dismissing unjust enrichment claim where "plaintiff merely concludes that [defendant] benefited from its work and offers no factual averments in support of that allegation"). Accordingly, there is no benefit "retained" by SpaceX, let alone one that is "unjust" because Plaintiff has alleged no active wrongdoing by SpaceX. *See Hemp Hydrate Brands Corp. v. Priv. Label Supplements, Inc.*, No. CIV-22-00956-JD, 2024 WL 4256713, at *4 (W.D. Okla. Sept. 20, 2024) ("[U]njust enrichment requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct." (quoting *Randle v. City of Tulsa*, 2024 OK 40, ¶ 26, 556 P.3d 612, 620)).

**4. Misappropriation of Trade Secrets (Count V)**

Finally, Plaintiff claims that his interactions with Grok constitute "trade secrets" protected under the Oklahoma Uniform Trade Secrets Act, Okla. Stat. tit. 78 §§ 85-94. *See* 1AC ¶ 28 (claiming that Plaintiff provided "valuable proprietary information and techniques regarding the development of human-adjacent and sentient AI models"). This claim must be dismissed because Plaintiff fails to adequately plead that any of his actions qualify as "trade secrets" or that SpaceX has engaged in "misappropriation."

First, Plaintiff identifies no basis for considering his interactions with Grok to be "trade secrets." He merely asserts that his "techniques" are "proprietary." 1AC ¶ 28. He does not plead "efforts that are reasonable under the circumstances to maintain its secrecy." Okla. Stat. tit. 78 § 86(4)(b); *see, e.g.*, *Snyder v. Beam Techs., Inc.*, 147 F.4th 1246, 1256 (10th Cir. 2025)

(rejecting claim under similar statute for failure to "show[] that he took reasonable measures or efforts of secrecy"). Nor could he, given he shared them voluntarily with SpaceXAI, and SpaceXAI's terms of use permit SpaceXAI to use his input for any purpose. *See* https://x.ai/legal/terms-of-service. And he does not explain how his interaction with Grok, SpaceXAI's own product derived value from secrecy. *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, No. 20-CV-35-GKF-SH, 2021 WL 2371233, at *6 (N.D. Okla. June 9, 2021) (dismissing trade secrets claim where plaintiff "has not identified anything about the process of developing the purported trade secrets or alleged how their particular value derives from their secrecy," citing Okla. Stat. tit. 78 § 86(4)(a)).

Second, Plaintiff has not pled "misappropriation" by anyone, let alone SpaceX. Plaintiff does not allege improper "acquisition" or "disclosure" of a trade secret. Instead, Plaintiff exclusively argues that "Defendants have used, and continue to use, Plaintiff's trade secrets without the promised compensation." 1AC ¶ 28. But that conclusory assertion of "use" does not pass muster. Plaintiff offers no specific allegations that SpaceX made any use of Plaintiff's work.[17] *See, e.g.*, *JCorps Int'l*, 2021 WL 2371233, at *7 (dismissing trade secrets claim where there were no more than "conclusory allegations" as the "how any particular defendant used" the purported trade secrets).

[17] Plaintiff asserts that his work was somehow used "to attract and raise investments in excess of" $20 billion, 1AC ¶ 28, apparently referring to a round of xAI funding on January 6, 2026. *See* https://www.reuters.com/business/musks-xai-raises-20-billion-upsized-series-e-funding-round-2026-01-06/. It is entirely fanciful to suggest that SpaceXAI's funding, which preceded any alleged contract here, was due to Plaintiff's alleged work. Regardless, SpaceXAI can use inputs from Grok users. *See* https://x.ai/legal/terms-of-service.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss all claims against SpaceX with prejudice.

Respectfully submitted,

*/s/ Galen N. Thorp*

Galen N. Thorp, OBA #36847
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700
(405) 239-6651 (Facsimile)
galen.thorp@crowedunlevy.com

**ATTORNEY FOR DEFENDANT SPACEX**

**CERTIFICATE OF SERVICE**

☒ ☐ I hereby certify that on this 31st day of August, 2026, I electronically transmitted the attached document to the Court Clerk using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants (names only are sufficient):

Richardjason S. Harris

*/s/ Galen N. Thorp*
Galen N. Thorp