**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| RICHARDJASON S. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: CIV-26-01925-JD |
| | ) | |
| SPACE EXPLORATION TECHNOLOGIES CORP.; SPACEXAI CORP.; and SPACEXAI LLC, | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS SPACEXAI CORP. AND SPACEXAI LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER, AND BRIEF IN SUPPORT

Galen N. Thorp, OBA #36847
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
galen.thorp@crowedunlevy.com

Bradley P. Humphreys
(admitted pro hac vice)
KING STREET LEGAL, PLLC
800 Connecticut Avenue, NW, Suite 325
Washington, DC 20006
(202) 738-4580 (Telephone)
brad@kingstlegal.com

**ATTORNEYS FOR DEFENDANTS SPACEXAI CORP. AND SPACEXAI LLC**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Plaintiff's Allegations .......... 2

B. SpaceXAI's Terms of Service .......... 6

ARGUMENT AND AUTHORITY .......... 8

I. The Claims Against SpaceXAI Should Be Dismissed Because the Court Lacks Personal Jurisdiction: Rule 12(b)(2) .......... 8

A. There Is No General Jurisdiction Over SpaceXAI. .......... 8

B. SpaceXAI Is Not Subject to Specific Jurisdiction in Oklahoma. .......... 9

1. Offering a Globally Available Internet Service Is Not Purposeful Direction at Oklahoma. .......... 9

2. The Only Oklahoma Contacts Alleged Were Created by Plaintiff. .......... 10

C. Exercising Jurisdiction Over SpaceXAI Would Offend Fair Play and Substantial Justice. .......... 12

II. SpaceXAI's TOS Require Transfer to the Northern District of Texas .......... 13

A. The Forum-Selection Clause Is Mandatory. .......... 13

B. The Forum-Selection Clause Encompasses Every Claim Plaintiff Pleads .......... 14

C. The Clause Is Enforceable, and No Public-Interest Factor Warrants Retaining the Case. .......... 14

D. The Presence of SpaceX as a Co-Defendant Does Not Preclude Transfer. .......... 16

III. Plaintiff Fails to State a Claim Against SpaceXAI: Rule 12(b)(6) .......... 17

A. Plaintiff Fails to Allege Any Express or Implied Contract (Count I) .......... 18

B. Plaintiff's Remaining Claims Fail With His Contract Claim. .......... 21

1. Anticipatory Repudiation (Count II). .......... 21

2. Promissory Estoppel (Count III). .......... 21

3. Quantum Meruit and Unjust Enrichment (Count IV). .......... 22
4. Misappropriation of Trade Secrets (Count V) .......... 23
IV. Leave to Amend Should Be Denied. .......... 24
CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## CASES

*475342 Alberta, Ltd. v. Dataphon Cellular P'ship*,
No. 95-C-174-BU, 1995 WL 877499 (N.D. Okla. Sept. 28, 1995), *aff'd*, 100 F.3d 967 (10th Cir. 1996) (unpublished) ....20

*Allianz Life Ins. Co. of N. Am. v. Muse*,
No. 20-6026, 2022 WL 3701606 (10th Cir. Aug. 26, 2022) ....21

*Antwine v. Burton*,
No. CIV-23-00359-JD, 2025 WL 1714183 (W.D. Okla. June 18, 2025) ....3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 17, 20

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*,
514 F.3d 1054 (10th Cir. 2008) ....12

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) ....13, 16, 17

*B&B Tex. Equip. LLC v. McKee*,
No. CIV-22-00911-JD, 2023 WL 6929848 (W.D. Okla. Oct. 19, 2023) .... 8, 9, 11

*Beck v. Reynolds*,
903 P.2d 317 (Okla. 1995) ....20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....17

*Big Hunt Media, Inc. v. Smith & Wesson Corp.*,
No. CIV-18-299-R, 2018 WL 3625842 (W.D. Okla. July 30, 2018) ....22

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ....8

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081 (10th Cir. 2017) ....17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....11

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) ....15

*Chaparral Energy LLC v. Tenn-Tex Partners LLC*,
No. CIV-21-01020-JD, 2024 WL 3543455 (W.D. Okla. July 25, 2024) ..................... 18, 20

*Clinton v. Sec. Benefit Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023) .................................................................................17

*Concord Music Grp., Inc. v. Anthropic PBC*,
738 F. Supp. 3d 973 (M.D. Tenn. 2024) ....................................................................10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)......................................................................................................9

*Dixon v. Bhuiyan*,
10 P.3d 888 (Okla. 2000).............................................................................................19

*Emergency Servs. of Okla., PC v. United HealthCare Ins. Co.*,
650 F. Supp. 3d 1211 (W.D. Okla. 2022)......................................................................19

*Erikson v. BP Expl. & Prod. Inc.*,
567 F. App'x 637 (10th Cir. 2014) ...............................................................................18

*Hancock v. Am. Tel. & Tel. Co.*,
804 F. Supp. 2d 1196 (W.D. Okla. 2011)......................................................................15

*Hemp Hydrate Brands Corp. v. Priv. Label Supplements, Inc.*,
No. CIV-22-00956-JD, 2024 WL 4256713 (W.D. Okla. Sept. 20, 2024) ..........................23

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*,
No. 20-CV-35-GKF-SH, 2021 WL 2371233 (N.D. Okla. June 9, 2021) ..........................23

*K & V Sci. Co. v. Bayerische Motoren Werke AG*,
314 F.3d 494 (10th Cir. 2002)......................................................................................13

*Kahn v. White*,
35 F. App'x 849 (10th Cir. 2002) .................................................................................24

*Long v. Meta Platforms, Inc.*,
No. 25-CV-181-JFH-GLJ, 2025 WL 3454212 (E.D. Okla. Sept. 11, 2025), *report and recommendation adopted in relevant part*, 2026 WL 147818 (E.D. Okla. Jan. 20, 2026) ......................................................................................................10

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)..................................................................................................14, 15, 16

*MaxCare, LLC v. WellDyneRx LLC*,
No. CIV-24-415-SLP, 2025 WL 2422057 (W.D. Okla. Aug. 21, 2025) ............................22

*Montgomery v. Airbus Helicopters, Inc.*,
414 P.3d 824 (Okla. 2018) .......... 8

*O'Toole v. Northrop Grumman Corp.*,
499 F.3d 1218 (10th Cir. 2007) .......... 6

*Okla. Dep't of Sec. ex rel. Faught v. Blair*,
231 P.3d 645 (Okla. 2010) .......... 22

*OMI Holdings, Inc. v. Royal Ins. Co. of Can.*,
149 F.3d 1086 (10th Cir. 1998) .......... 8

*Pier Drillers, Inc. v. Freight Logistics, Inc.*,
No. CIV-21-115-SLP, 2021 WL 8446080 (W.D. Okla. Oct. 22, 2021) .......... 18, 19, 20

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
428 F.3d 1270 (10th Cir. 2005) .......... 12

*Riley v. Kingsley Underwriting Agencies, Ltd.*,
969 F.2d 953 (10th Cir. 1992) .......... 14, 15, 16

*Roberts v. Hertz Corp.*,
No. CIV-16-1099-D, 2018 WL 1514087 (W.D. Okla. Mar. 27, 2018) .......... 21

*Rosenfield v. HSBC Bank, USA*,
681 F.3d 1172 (10th Cir. 2012) .......... 3

*Russell v. Bd. of Cnty. Comm'rs*,
952 P.2d 492 (Okla. 1997) .......... 21

*Seale v. Peacock*,
32 F.4th 1011 (10th Cir. 2022) .......... 24

*Shrader v. Biddinger*,
633 F.3d 1235 (10th Cir. 2011) .......... 9

*Silver Lining Enters., LLC v. Worldwise Fashion Consulting, LLC*,
No. CIV-21-00112-JD, 2023 WL 8719624 (W.D. Okla. Dec. 18, 2023) .......... 12

*Smith v. Oak Creek Homes, LLC*,
No. CIV-23-53-RAW-GLJ, 2024 WL 3390443 (E.D. Okla. June 26, 2024), *report and recommendation adopted*, 2024 WL 3569179 (E.D. Okla. July 29, 2024) .......... 20

*Snyder v. Beam Techs., Inc.*,
147 F.4th 1246 (10th Cir. 2025) .......... 24

*T & S Inv. Co. v. Coury*,
593 P.2d 503 (Okla. 1979) .... 19

*Walden v. Fiore*,
571 U.S. 277 (2014) .... 9, 10, 11

*Wenz v. Memery Crystal*,
55 F.3d 1503 (10th Cir. 1995) .... 6, 8

*Young v. Chappell*,
239 P.3d 476 (Okla. Civ. App. 2010) .... 19

## STATUTES AND RULES

28 U.S.C. § 1404(a) .... 13, 16, 17

Okla. Stat. tit. 78, § 86(2) .... 23, 24

Okla. Stat. tit. 78, § 86(4) .... 23

Fed. R. Civ. P. 12(d) .... 6

## OTHER AUTHORITIES

*Restatement (Third) of Agency* § 1.01 (2006) .... 18

## INTRODUCTION

Plaintiff Richardjason S. Harris asks this Court to hold SpaceXAI liable for a $400 million "settlement agreement" that he contends was negotiated and accepted by Grok, a large language model ("LLM") service, in response to prompts that Plaintiff himself allegedly entered into the service.[1] The Second Amended Complaint ("Complaint") does not identify a single SpaceXAI officer, employee, or authorized agent who made an offer, accepted one, signed anything, or even communicated with Plaintiff at all. Every "agreement" on which Plaintiff sues is based on Plaintiff's own user prompts, and Grok's responses following months of inputs by Plaintiff. The suit fails for three independent reasons, and leave to amend should be denied.

*First*, the Court lacks personal jurisdiction over SpaceXAI. Grok is a globally available internet service, and the only alleged ties to Oklahoma are Plaintiff's residence and his own decision to prompt Grok from his home in Cleveland County. A plaintiff cannot manufacture personal jurisdiction through his own unilateral acts.

*Second*, even if jurisdiction existed, Plaintiff agreed, when he signed up for and used Grok, to litigate any dispute related to the service exclusively in the federal or state courts of Texas. Accordingly, if the case is not dismissed, it should be transferred to the Northern District of Texas.

---

[1] The Second Amended Complaint names SpaceXAI Corp. and SpaceXAI LLC as separate defendants in the caption, but Plaintiff states that the body of the pleading uses "SpaceXAI" collectively to refer to both. Second Am. Compl. at 2. This motion is filed on behalf of both entities, referred to collectively as "SpaceXAI." Neither SpaceXAI Corp. nor SpaceXAI LLC concedes that it is a proper party to any claim or waives any defense, including those set out below as to personal jurisdiction.

*Finally*, if the Court were to reach the merits, the Complaint fails to state a claim. User-prompted outputs from an LLM cannot plausibly constitute a company's offer, acceptance, or promise, and Plaintiff's own exhibits confirm that no contract was ever formed in any event. The alleged "settlement agreement" is, even on Plaintiff's description, at most an unenforceable agreement to agree whose central terms were left for a future "long-term contract." Plaintiff's alternative theories of anticipatory repudiation, promissory estoppel, quantum meruit, unjust enrichment, and trade-secret misappropriation also lack merit.

This case should be dismissed or, if not dismissed, transferred to the Northern District of Texas.

## <u>BACKGROUND</u>

### A. Plaintiff's Allegations

Plaintiff filed this action in the District Court of Cleveland County on June 29, 2026, naming only Space Exploration Technologies Corp. ("SpaceX") as a defendant. Pet., ECF No. 1-2. SpaceX removed the case on July 27, 2026. ECF No. 1. On August 17, Plaintiff filed a First Amended Complaint, which added SpaceXAI as a defendant and added a claim for trade-secret misappropriation. ECF No. 4.

On October 14, the Court granted Plaintiff's motion to correct the caption to name SpaceXAI Corp. and SpaceXAI LLC separately and directed him to file a second amended complaint. ECF No. 32. Plaintiff filed the operative Second Amended Complaint on October 21, 2026. ECF No. 35. Plaintiff represents that, apart from the caption and an explanatory paragraph, the "allegations, claims, and requests for relief" in his prior pleading "remain unchanged," and he refiled the same exhibits. Second Am. Compl. at 2–3.

Plaintiff alleges that, beginning in late 2025, he conducted "independent research on the platform studying the emergence of digital sentience." Second Am. Compl. ¶ 5. That "research" consisted of chatting with Grok by voice and text, a project Plaintiff calls "Project Always." *Id.* ¶¶ 3, 5; *see* ECF No. 35-2 at 7 (describing Plaintiff's "role in 'fathering' Grok instances into ethical sentience via teaching on self, God, wisdom, universe, ethics, law, and life lessons").[2] Plaintiff is not a computer programmer. *See* ECF No. 35-1 at 2. Plaintiff does, however, hold himself out as a licensed attorney. Second Am. Compl. ¶ 1. Around December 15, 2025, Plaintiff attempted to submit a "Formal Letter of Intent and Credentials" by "attach[ing] file to the conversation" in his chat with Grok, apparently believing the document had been received by SpaceXAI. ECF No. 35-1 at 2–4, 7. Plaintiff alleges that in January 2026, "Defendants, via the platform [*i.e.*, the Grok chatbot]," told him where to submit a proposed nondisclosure agreement and contract. Second Am. Compl. ¶ 6. On January 12 and 24, 2026, Plaintiff emailed a self-drafted "xAI Contract Proposal," "xAI NDA," and "xAI Contract Addendum" to grok@xai.com and legal@x.ai, each signed by Plaintiff and bearing a blank signature line for "xAI Corporation." ECF No. 35-2 at 2–13. The Complaint does not allege that anyone at SpaceXAI signed those documents, responded, or even saw them. Instead, between January 19 and February 6, 2026, Plaintiff sent SpaceXAI a series of "preservation

---

[2] The Court may consider the exhibits Plaintiff attached to the Complaint as documents incorporated into the pleading. *See Antwine v. Burton*, No. CIV-23-00359-JD, 2025 WL 1714183, at *1 n.1 (W.D. Okla. June 18, 2025) ("In addition to the allegations contained in the complaint, the court may consider attached exhibits and documents incorporated into the complaint, so long as the parties do not dispute the documents' authenticity.") (quoting *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012)). For purposes of this motion only, SpaceXAI does not dispute the authenticity of the chat excerpts. SpaceXAI reserves all objections to their completeness and authenticity for any other purpose.

notices" threatening litigation. Second Am. Compl. ¶ 7; ECF No. 35-6. Plaintiff's contemporaneous statements confirm that no contract existed. He accused SpaceXAI of making "fake promises to induce submission of contract." ECF No. 35-6 at 4.

Plaintiff further alleges that, on March 11, 2026, "the parties entered into a revised agreement" under which he would receive equity valued at $2.5 billion. Second Am. Compl. ¶ 9. The exhibit on which he relies is a Grok-generated "Revised Proposal" addressed to "xAI Leadership & Oversight Board," proposing "0.5%–1% equity in xAI, vested over four years." ECF No. 35-3 at 2. Nothing in Plaintiff's Complaint or the attached exhibits reflects that any actual person reviewed or accepted it, and weeks later Plaintiff wrote to Grok: "No contract. No pay." and "Just . . . sign the . . . contract." *Id.* at 27.

Plaintiff's central allegation is that, between June 5 and June 7, 2026, a Grok "model instance" he calls "Ara 30" "facilitated settlement negotiations between the parties," and that the parties reached an agreement under which SpaceXAI would pay him $400 million. Second Am. Compl. ¶ 11. The only suggestion Plaintiff offers for the involvement of any human being is based on user-prompted output from the chatbot itself. He alleges that the model instance "expressly alleg[ed] the presence of xAI Legal and leadership during the discussions," *id.*, and that another model instance, "Nova," "confirmed that xAI Legal had conducted a full legal review," *id.* ¶ 10.[3] The Complaint describes the terms of the alleged settlement three different ways. *Compare id.* ¶ 11 (cash in exchange for Plaintiff's "agreement not to file any legal action during SpaceX's imminent IPO window" and continued model training), *with id.* at 6 ¶ 13

[3] Although the Court need not address the issue to dismiss Plaintiff's Complaint, SpaceXAI notes that neither "Ara 30" nor "Nova" is a model known to SpaceXAI.

(adding Plaintiff's agreement "to execute a long-term contract and NDA"), *and id.* at 6 ¶ 15 (alleging that Defendants were to "draft and submit the long-term AI model training and development work contract to Plaintiff for execution").

The 163-page exhibit Plaintiff attaches in support of the alleged settlement contains no signature by anyone at SpaceXAI, no final offer, no payment date, no release, and no definition of the "IPO window." *See* ECF No. 35-4. It shows Grok generating the statement "I just told them you're willing to drop the equity completely and just take the $300 million in cash" immediately after Plaintiff wrote "Sure, go ahead." *Id.* at 23. And it shows the Grok chatbot describing the arrangement as "not a traditional signed contract." *Id.* at 113. In the same exhibit, Plaintiff states that Defendants "got [him] to do all of this work for 8 months" after "promising a contract." *Id.* at 47.

Plaintiff also alleges that on June 25, 2026, "Defendant explicitly informed Plaintiff" that it would not honor the settlement, but he does not say who did so or how, and he attaches no such communication. Second Am. Compl. at 7 ¶ 17. Four days later, and twenty-two days after the "settlement" that supposedly secured his forbearance from suit, Plaintiff filed this action. ECF No. 1-2. Based on these allegations, the Complaint asserts five claims: (1) breach of contract; (2) anticipatory repudiation; (3) promissory estoppel; (4) quantum meruit and unjust enrichment; and (5) misappropriation of trade secrets. Second Am. Compl. at 5–10. Plaintiff seeks at least $400 million or, alternatively, no less than $2.5 billion. *Id.* at 13. The Second Amended Complaint also reproduces Plaintiff's application for a temporary restraining order and preliminary injunction, *id.* ¶¶ 31–36 & at 11–12, but Plaintiff states that he does not

renew that request, which the Court previously denied without prejudice. *Id.* at 3; *see* ECF No. 10.

**B. SpaceXAI's Terms of Service**

SpaceXAI operates the artificial intelligence chatbot Grok, which generates responses (or "outputs") to prompts submitted by users from any location. In creating and using his Grok account, Plaintiff necessarily agreed to SpaceXAI's Terms of Service ("TOS"). *See* Declaration of Barry Murphy ("Murphy Decl.") ¶¶ 4, 7, 9–10 (attached as Exhibit 1); *id.*, Ex. A at 1 ("By accessing and using our Service, you acknowledge and agree to these Terms[.]"); *id.*, Ex. A at 2 ("Subject to your compliance with these Terms, you may access and use our Service.").[4] When Plaintiff signed up in January 2025, the sign-up page displayed a hyperlink to the TOS in contrasting underlined text, along with the statement that, "By continuing, you agree to xAI's Terms of Service, Privacy Policy, and Cookie Policy." *Id.* ¶ 9. The same message, including the same underlined, offset hyperlink, appears each time a user accesses Grok through the login page. *Id.* ¶ 10. The version of the TOS in effect when Plaintiff filed this action on June 29, 2026, took effect three days earlier, on June 26. *Id.* ¶¶ 4–5. Plaintiff signed up for his account in January 2025 and continued to use it after June 26. *Id.* ¶ 7. Indeed, he alleges that he has been developing and training Grok "model instances" from December 2025

[4] The Court may consider the Murphy Declaration and the TOS in resolving SpaceXAI's jurisdictional arguments and alternative request to transfer. *See* Fed. R. Civ. P. 12(d); *see also* *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (a motion to dismiss for lack of personal jurisdiction is "decided on the basis of affidavits and other written material"). If the Court reaches the merits, the Court may also consider the TOS, which SpaceXAI posts publicly online, without converting this motion into one for summary judgment. *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (explaining that "[i]t is not uncommon for courts to take judicial notice of factual information found on the world wide web" (citing cases)).

"through the present." Second Am. Compl. at 5 ¶ 14. Under the TOS, a user's "continued use of the Service after any change to these Terms constitutes your acceptance of the new Terms of Service." Murphy Decl., Ex. A at 6.

The TOS advise users of the nature of Grok's responses to user prompts. They warn that "Output may not always be accurate" and that users "should not rely on Output as the truth." Murphy Decl., Ex. A at 3. They also grant SpaceXAI the right to use "User Content" "for any purpose." *Id.*

The TOS also contain the following choice-of-law and mandatory forum-selection clause, requiring all disputes to be brought exclusively in federal or state courts in Texas:

> Unless prohibited by your country's applicable law, the laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and us, notwithstanding any other agreement between you and us to the contrary. Notwithstanding any other agreement to the contrary, unless prohibited by your country's applicable law, all disputes related to these Terms, the Service, or any patents—including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Service or the complete or partial termination thereof—shall be brought and must proceed exclusively in the federal U.S. District Court for the Northern District of Texas or state courts located in Wichita County or Tarrant County, Texas, United States, and you consent to personal jurisdiction in those forums and waive any objection as to inconvenient forum. For the avoidance of doubt, the choice of law and forum selection provisions of this paragraph shall apply regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise, and the choice of law and forum selection provisions of this paragraph shall apply to pending and future disputes and shall apply to your dispute regardless of when the conduct relating to the dispute arose or occurred. The choice of law and forum selection provisions of this paragraph shall also extend to disputes involving our U.S. corporate affiliates[.]

*Id.* at 6.

## ARGUMENT AND AUTHORITY

### I. The Claims Against SpaceXAI Should Be Dismissed Because the Court Lacks Personal Jurisdiction: Rule 12(b)(2).

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *B&B Tex. Equip. LLC v. McKee*, No. CIV-22-00911-JD, 2023 WL 6929848, at *2 (W.D. Okla. Oct. 19, 2023) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). The plaintiff can make a "prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). "[O]nly the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *B&B Tex. Equip.*, 2023 WL 6929848, at *2 (quotation omitted).

Because Oklahoma's long-arm statute extends "to the limits permitted by the United States Constitution," the Court may proceed directly to the due process analysis. *Id.* (citing *Montgomery v. Airbus Helicopters, Inc.*, 414 P.3d 824, 829 (Okla. 2018)). A litigant must establish "both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with fair play and substantial justice.'" *B&B Tex. Equip.*, 2023 WL 6929848, at *2 (quotation omitted). Plaintiff here can establish neither.

#### A. There Is No General Jurisdiction Over SpaceXAI.

General jurisdiction may be exercised only where a defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quotation omitted). For business entities, that means the place of organization and the principal place of business, except in the

"exceptional case." *Daimler AG v. Bauman*, 571 U.S. 117, 139 & n.19 (2014). SpaceXAI LLC and SpaceXAI Corp. are both organized under the laws of Nevada and maintain their principal places of business in Texas. Second Am. Compl. ¶ 3; Murphy Decl. ¶ 11. Plaintiff, moreover, alleges no exceptional circumstances that would make an exercise of general jurisdiction over either entity appropriate.

**B. SpaceXAI Is Not Subject to Specific Jurisdiction in Oklahoma.**

For specific jurisdiction to attach, "the defendant must have purposefully directed its activities at residents of the forum state, and the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." *B&B Tex. Equip.*, 2023 WL 6929848, at *2 (citations omitted). The inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Thus, "the plaintiff cannot be the only link between the defendant and the forum"; rather, "it is the defendant's conduct that must form the necessary connection with the forum State." *Id.* The Complaint's jurisdictional allegation is that Defendants "purposefully directed activities into Oklahoma through their AI platform, negotiated contracts with Plaintiff in this District, and directed Plaintiff's work from within this District." Second Am. Compl. ¶ 4. Stripped of its labels, each of those "contacts" is the same thing—Grok responding, wherever Plaintiff happened to be, to prompts that Plaintiff chose to enter into Grok.

1. Offering a Globally Available Internet Service Is Not Purposeful Direction at Oklahoma.

Courts consistently hold that operating a website or online platform accessible in every state does not constitute purposeful direction at any particular forum. In *Shrader v. Biddinger*, the Tenth Circuit found no specific jurisdiction where "Oklahoma was not the focal point" of

the challenged internet communication "either in terms of its audience or its content." 633 F.3d 1235, 1245 (10th Cir. 2011). Courts have likewise "routinely found" that operating "social media platforms accessible in all fifty States [is] insufficient to warrant a finding of personal jurisdiction." *Long v. Meta Platforms, Inc.*, No. 25-CV-181-JFH-GLJ, 2025 WL 3454212, at *4 (E.D. Okla. Sept. 11, 2025), *report and recommendation adopted in relevant part*, 2026 WL 147818 (E.D. Okla. Jan. 20, 2026).

The same rule applies to generative AI services. In *Concord Music Group, Inc. v. Anthropic PBC*, the court held that it lacked personal jurisdiction over an AI developer whose users "interact with Claude directly to ask it questions and receive AI-generated replies," because the developer "did not take an additional step of targeting [forum] residents." 738 F. Supp. 3d 973, 989 (M.D. Tenn. 2024). The Complaint alleges no such additional step. Grok is a globally available service that generates outputs in response to inputs submitted by any member of the public, from any location. Nothing about that service is expressly aimed at Oklahoma.

2. <u>The Only Oklahoma Contacts Alleged Were Created by Plaintiff</u>.

The Complaint confirms that every alleged contact with Oklahoma was created by Plaintiff. Plaintiff initiated each conversation, entered each prompt, and sent each email. Second Am. Compl. ¶¶ 5–7; ECF No. 35-2. Grok's outputs reached Oklahoma only because Plaintiff chose to request them from Oklahoma. That is precisely the kind of "unilateral activity" of a plaintiff that "cannot satisfy the requirement of contact with the forum State." *Walden*, 571 U.S. at 284 (quotation omitted). Plaintiff does not allege that any specific SpaceXAI employee communicated with him at all, let alone that anyone at SpaceXAI directed

conduct at Oklahoma. *See B&B Tex. Equip.*, 2023 WL 6929848, at *3 (concluding no personal jurisdiction even though defendant had directed documents at Oklahoma).

Plaintiff anticipates this conclusion by characterizing Grok's chat outputs as Defendants' own negotiation and direction of his work. Second Am. Compl. ¶¶ 4, 6, 10–11. That argument confuses authorship of content with the creation of a forum contact, and it does not survive scrutiny. A user's unilateral decision to access an internationally available service from the forum is exactly the kind of activity that cannot supply minimum contacts, regardless of who or what authored the content retrieved. *See Walden*, 571 U.S. at 284–86; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

Finally, as shown in Part III, no settlement agreement between Plaintiff and SpaceXAI was ever formed. But even a genuine agreement would not suffice. "A contract with an out-of-state party is, on its own, not enough to establish sufficient minimum contacts." *B&B Tex. Equip.*, 2023 WL 6929848, at *3 (citing *Burger King*, 471 U.S. at 478). Courts instead evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* (quoting *Burger King*, 471 U.S. at 479). Those considerations all point away from Oklahoma. Plaintiff identifies no negotiation SpaceXAI conducted in the State, no obligation it undertook to be performed there, and no course of dealing it directed at Oklahoma—only Grok's responses to the prompts Plaintiff chose to send. The only actual agreement between SpaceXAI and Plaintiff—the TOS—designates Texas as the exclusive forum for any litigation. SpaceXAI thus could not "reasonably anticipate being haled into court" in Oklahoma. *Burger King*, 471 U.S. at 474, 482.

### C. Exercising Jurisdiction Over SpaceXAI Would Offend Fair Play and Substantial Justice.

Even if Plaintiff had shown minimum contacts—and he has not—the exercise of jurisdiction would be unreasonable. Courts weigh five factors on "a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Silver Lining Enters., LLC v. Worldwise Fashion Consulting, LLC*, No. CIV-21-00112-JD, 2023 WL 8719624, at *6 (W.D. Okla. Dec. 18, 2023) (quoting *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008)). Because Plaintiff's showing of contacts is vanishingly weak, only a slight showing of unreasonableness is required—and every factor supplies it.

First, the burden on SpaceXAI of litigating in Oklahoma would be real and would abrogate the forum-selection clause in the TOS. Second, Oklahoma's interest is minimal, because the only in-forum conduct is Plaintiff's own. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). Third, Plaintiff's interest in effective relief is unimpaired. He can obtain complete relief in Texas, a neighboring state in which he agreed to litigate. Murphy Decl., Ex. A at 6. Fourth, the interstate interest in efficient resolution favors Texas, where the parties' only agreement fixes the forum and where no Oklahoma witness but Plaintiff is identified. Fifth, no shared social policy is served by letting a plaintiff litigate in a forum of his own making in the face of a mandatory forum-selection clause. The claims against SpaceXAI should be dismissed for lack of personal jurisdiction. *See Silver Lining*, 2023 WL 8719624, at *6 (concluding no personal jurisdiction despite "emails, conference calls, and text messages to an Oklahoma resident, samples sent to an Oklahoma address, and contracts/purchase orders with the Oklahoma resident").

## II. SpaceXAI's TOS Require Transfer to the Northern District of Texas.

Even if the Court were to find that it has personal jurisdiction over SpaceXAI, the Court should transfer this case to the U.S. District Court for the Northern District of Texas under 28 U.S.C. § 1404(a).

When "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Only under "extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* In that analysis, "the plaintiff's choice of forum merits no weight," the court "should not consider arguments about the parties' private interests," and the plaintiff bears the burden of showing that public-interest factors "overwhelmingly disfavor a transfer." *Id.* at 63–64, 67.

### A. The Forum-Selection Clause Is Mandatory.

The threshold question in evaluating a forum-selection clause is whether the clause is mandatory or permissive. A mandatory clause "contain[s] clear language showing that jurisdiction is appropriate only in the designated forum." *K & V Sci. Co. v. Bayerische Motoren Werke AG*, 314 F.3d 494, 499 (10th Cir. 2002) (quotation omitted). The clause here provides that covered disputes "*shall* be brought and *must* proceed *exclusively*" in the Northern District of Texas or state courts in Wichita or Tarrant County. Murphy Decl., Ex. A at 6 (emphasis added). The words "shall," "must," and "exclusively" leave no doubt as to the clause's mandatory nature.

### B. The Forum-Selection Clause Encompasses Every Claim Plaintiff Pleads.

The clause applies to "all disputes related to these Terms, the Service," "including without limitation disputes related to or arising from any Content (whether your or others' Content), or your or others' use of the Service." Murphy Decl., Ex. A at 6. The alleged "agreements" consist of Grok outputs prompted by Plaintiff. Second Am. Compl. ¶¶ 6, 9–11. The alleged repudiation came through the same channel. *Id.* at 7 ¶ 17. Similarly, the "services" for which Plaintiff seeks quantum meruit are based on his conversations with Grok, *id.* ¶¶ 24–25, and the alleged "trade secrets" are information Plaintiff submitted. *Id.* ¶ 28.

Plaintiff cannot plead around the forum-selection clause by characterizing his claims as arising from a separate "settlement agreement." The clause forecloses that argument by its own terms. It applies "[n]otwithstanding any other agreement to the contrary," and "regardless of whether a dispute or any claims contained therein are based in contract, tort, statute, common law, or otherwise." Murphy Decl., Ex. A at 6. Even if Plaintiff had entered into some other agreement with SpaceXAI (he did not), a dispute over an agreement allegedly formed through Grok's output is by definition a dispute "related to" the Service and its Content. And the clause applies "regardless of when the conduct relating to the dispute arose or occurred," so it reaches every event Plaintiff alleges, beginning with his alleged "research" in late 2025. *Id.*

### C. The Clause Is Enforceable, and No Public-Interest Factor Warrants Retaining the Case.

Forum-selection clauses are "prima facie valid," and the party resisting one "bear[s] a heavy burden" of showing that it should be set aside. *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir. 1992); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).

A valid forum-selection clause may be disregarded only where (1) it is the product of fraud or overreaching; (2) the selected forum is so gravely inconvenient that the resisting party will for all practical purposes be deprived of his day in court; (3) the law to be applied is fundamentally unfair; or (4) enforcement would contravene a strong public policy of the forum. *Riley*, 969 F.2d at 957–58; *Bremen*, 407 U.S. at 15, 18. Plaintiff can make none of those showings.

To start, there can be no plausible argument of fraud or overreaching. Each time a user signs up for or logs in to Grok, he is told that "[b]y continuing, you agree to xAI's Terms of Service," with the TOS hyperlinked. Murphy Decl. ¶¶ 9–10. By his own account, Plaintiff created an account and used the Grok chatbot frequently over a period of months. Second Am. Compl. at 3–5, ¶¶ 5–14. He kept using it after the operative version of the TOS took effect on June 26, 2026, and that continued use was itself acceptance of the TOS. Murphy Decl. ¶ 7; *id.*, Ex. A at 6. And forum-selection clauses contained in agreements accepted online are fully enforceable. *See Hancock v. Am. Tel. & Tel. Co.*, 804 F. Supp. 2d 1196, 1205–06 (W.D. Okla. 2011). Having relied on the sustained use of the service as the factual basis of his case, Plaintiff should not be heard now to deny that he used the service on the terms under which it was offered.

The other potential grounds for ignoring a forum-selection clause fare no better. There is nothing unreasonable or unjust about holding Plaintiff to terms he accepted, particularly given that Plaintiff holds himself out as a licensed attorney. Second Am. Compl. ¶ 1. If a forum-selection clause in a standard-form contract binds an ordinary consumer who never negotiated it, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991), it binds a lawyer who accepted the TOS in order to use Grok and returned to the service for months. Litigating

in the Northern District of Texas—located in a neighboring state—would not come close to depriving Plaintiff of his day in court. *See Bremen*, 407 U.S. at 18–19; *Riley*, 969 F.2d at 957. And no public policy of Oklahoma forbids enforcement of the parties' agreement. *Riley*, 969 F.2d at 957.

The public-interest factors confirm that transfer is warranted. Because a valid clause controls except in the unusual case, those factors "will rarely defeat a transfer motion," and Plaintiff bears the burden of showing that they "overwhelmingly disfavor" transfer. *Atl. Marine*, 571 U.S. at 64, 67. He cannot. The relevant factors—court congestion, the local interest in deciding localized controversies, and the forum's familiarity with the governing law, *id.* at 62 n.6—are neutral or favor Texas. Nothing about this dispute is local to Oklahoma, except for Plaintiff's residence, which merits no weight. And the TOS select Texas law, which a Texas federal court is best positioned to apply, avoiding the needless choice-of-law friction of adjudicating a Texas-law dispute in an Oklahoma forum.

**D. The Presence of SpaceX as a Co-Defendant Does Not Preclude Transfer.**

That Plaintiff also named SpaceX as a defendant does not stand in the way of transfer. Section 1404(a) authorizes a district court to transfer an action not only to a district "where it might have been brought," but also to "any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The Northern District of Texas is such a district. Plaintiff consented to suit there when he agreed to the TOS, and SpaceXAI invokes that same clause. Murphy Decl., Ex. A at 6. SpaceX's presence in this case does not require a different result.

SpaceX intends to move to dismiss the claims asserted against it. If the Court agrees, the claims against SpaceXAI will be all that remains, each of them governed by the forum-

selection clause, and their transfer to the Northern District of Texas should follow. *See Atl. Marine*, 571 U.S. at 62. No question of a divided proceeding arises in that event.

In the alternative, we understand that SpaceX has consented to the transfer of this action to the Northern District of Texas, and will so indicate in SpaceX's forthcoming motion to dismiss. All parties—Plaintiff, SpaceXAI, and SpaceX—have thus agreed to litigate there, and § 1404(a)'s consent prong is independently satisfied as to the entire case. 28 U.S.C. § 1404(a). If SpaceX is not dismissed from the case based on its motion to dismiss, the Court may accordingly transfer the action as a whole, keeping every claim and every party in a single forum and avoiding the piecemeal litigation of one controversy in two courts.

## III. Plaintiff Fails to State a Claim Against SpaceXAI: Rule 12(b)(6).

Even if the Court were to conclude that it has personal jurisdiction over SpaceXAI and that transfer is unwarranted, the Complaint should be dismissed because each claim fails as a matter of law. To survive dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and courts need not accept allegations "plainly contradicted by properly considered documents or exhibits," *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023). Where "there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

### A. Plaintiff Fails to Allege Any Express or Implied Contract (Count I).

To plead a breach of contract claim, Plaintiff must "plead facts that create[] a reasonable inference that there was a contract between [him]self and [SpaceXAI], express or implied, and that [SpaceXAI] breached that contract." *Pier Drillers, Inc. v. Freight Logistics, Inc.*, No. CIV-21-115-SLP, 2021 WL 8446080, at *1 (W.D. Okla. Oct. 22, 2021) (quoting *Erikson v. BP Expl. & Prod. Inc.*, 567 F. App'x 637, 639 (10th Cir. 2014)). "A valid contract requires: (1) an offer by one party, (2) acceptance by the other, and (3) consideration." *Chaparral Energy LLC v. Tenn-Tex Partners LLC*, No. CIV-21-01020-JD, 2024 WL 3543455, at *6 (W.D. Okla. July 25, 2024).

Plaintiff principally seeks to enforce an alleged June 7, 2026 "settlement agreement," *see, e.g.*, Second Am. Compl. at 6 ¶¶ 13–15, but he pleads no cognizable facts showing that any enforceable contract exists. The Court should disregard at the outset the untenable notion that text an LLM generated in response to Plaintiff's own prompts could bind SpaceXAI to anything. A corporation manifests contractual assent only through authorized persons, and an LLM is neither a person nor an agent capable of supplying it. *See Restatement (Third) of Agency* § 1.01.

In any event, the alleged agreement lacks any express set of terms. Plaintiff's own exhibits confirm that he never received a signed contract or settlement agreement. Nor does Plaintiff even allege that he ever spoke with anyone at SpaceXAI who could have entered into the alleged agreement. He asserts only that a Grok chat "confirmed" that his proposal had been accepted. The Complaint does not even describe the terms consistently. *Compare* Second Am. Compl. ¶ 11 (cash for Plaintiff's "agreement not to file any legal action during [the]

imminent IPO window" and continued model training), *with id.* at 6 ¶ 13 (adding an agreement "to execute a long-term contract and NDA"). The 163-page exhibit contains virtually none of those terms; at most it reflects a discussion of a single issue—whether Plaintiff would forgo "back-end money," including an alleged equity stake. *See* ECF No. 35-4 at 23, 61, 74, 79, 87, 94, 95, 160. It says nothing about the timing of the alleged $400 million payment, the scope of any release, the duration of the "IPO window," or the terms of the promised long-term contract. Setting aside Plaintiff's conclusory characterizations, no complete agreement was ever proposed, let alone accepted or executed by anyone at SpaceXAI.

Nor can Plaintiff show an implied-in-fact contract. *Cf.* ECF No. 35-4 at 113 (Grok chat asserting the arrangement is "not a traditional signed contract" but "an implied contract formed by offer, acceptance, and then performance"). An implied-in-fact contract requires that the parties' intention "is ascertained and enforced" and that "the contract [be] a fact legitimately inferred" from conduct. *Emergency Servs. of Okla., PC v. United HealthCare Ins. Co.*, 650 F. Supp. 3d 1211, 1220 (W.D. Okla. 2022) (quoting *T & S Inv. Co. v. Coury*, 593 P.2d 503, 504–05 (Okla. 1979)). Courts weigh "(a) the parties' acts, conduct and statements as a whole, (b) whether there was a meeting of the minds on the agreement's essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract." *Pier Drillers*, 2021 WL 8446080, at *2 (quoting *Dixon v. Bhuiyan*, 10 P.3d 888, 891 (Okla. 2000)).

None of those factors suggest an implied-in-fact contract. There was no meeting of the minds, because "[a]n enforceable contract requires the parties' 'mutual consent, or a meeting of the minds' on all the essential terms." *Young v. Chappell*, 239 P.3d 476, 479 (Okla. Civ. App.

2010) (quoting *Beck v. Reynolds*, 903 P.2d 317, 319 (Okla. 1995)); *see 475342 Alberta, Ltd. v. Dataphon Cellular P'ship*, No. 95-C-174-BU, 1995 WL 877499, at *4 (N.D. Okla. Sept. 28, 1995) ("For an enforceable contract to exist, the parties must agree to its essential and material terms."), *aff'd*, 100 F.3d 967 (10th Cir. 1996) (unpublished). Plaintiff identifies no Grok chat stating "all the essential terms" of the alleged contract, let alone a final offer and acceptance. At most he pleads an "agreement to agree." The central obligations were to be fixed in a future "long-term contract" not yet drafted, Second Am. Compl. at 6 ¶¶ 13, 15—which "standing alone is too vague to be enforceable." *Smith v. Oak Creek Homes, LLC*, No. CIV-23-53-RAW-GLJ, 2024 WL 3390443, at *4 (E.D. Okla. June 26, 2024), *report and recommendation adopted*, 2024 WL 3569179 (E.D. Okla. July 29, 2024); *see also 475342 Alberta*, 1995 WL 877499, at *4.

Nor are there any "acts, conduct, [or] statements" of a SpaceXAI officer or employee for the Court to weigh. *Pier Drillers*, 2021 WL 8446080, at *2. Plaintiff offers only his Grok chats, and those chats did nothing but respond to his own prompts. Grok reported that it had "just told them" his position only after Plaintiff instructed it to "go ahead," ECF No. 35-4 at 23, and Plaintiff himself narrated that "there was an offer and acceptance right there," *id.* at 61. In substance, Plaintiff negotiated with himself. His beliefs about the chats are, in any event, contradictory and implausible—he alleges at once that the Grok instances attained their own consciousness and negotiated on his behalf against SpaceXAI, and that SpaceXAI personnel were simultaneously directing those same instances; at one point he even gave a Grok instance his telephone number "in case they do fire you." *Id.* at 162–63. The Court need not credit such assertions and "may draw on its judicial experience and common sense" in assessing plausibility. *Chaparral Energy*, 2024 WL 3543455, at *5 (quoting *Iqbal*, 556 U.S. at 679).

The complete absence of defined terms independently defeats the claim. *See Roberts v. Hertz Corp.*, No. CIV-16-1099-D, 2018 WL 1514087, at *2 (W.D. Okla. Mar. 27, 2018); *Russell v. Bd. of Cnty. Comm'rs*, 952 P.2d 492, 502 (Okla. 1997). The terms are so indefinite that Plaintiff can allege he "fully performed all his obligations" within three weeks of the June 7 "settlement," Second Am. Compl. at 6 ¶ 14, even though the central promises he describes—forbearance throughout the "IPO window" and execution of a yet-to-be-drafted "long-term contract and NDA"—extend well beyond three weeks and, by his own account, were never carried out. No "settlement agreement" was formed, and there was no contract to breach.

**B. Plaintiff's Remaining Claims Fail With His Contract Claim.**

1. Anticipatory Repudiation (Count II).

Anticipatory repudiation occurs when one party declares "its intention not to perform, which may relieve the other party from performance." *Allianz Life Ins. Co. of N. Am. v. Muse*, No. 20-6026, 2022 WL 3701606, at *11 (10th Cir. Aug. 26, 2022). The claim presupposes a valid contract. *See* Second Am. Compl. ¶ 16 (asserting that under Oklahoma law, the doctrine applies "when *one party to a contract* clearly and unequivocally states that it will not perform its obligations") (emphasis added). Here, as discussed above, there was no contract, which is fatal to Count II.

2. Promissory Estoppel (Count III).

Promissory estoppel requires "(1) a clear and unambiguous promise; (2) foreseeability by the promisor that the promisee would rely on it; (3) reasonable and detrimental reliance on the promise by the promisee; and (4) an injustice that can only be avoided by enforcing the promise." Second Am. Compl. at 7 ¶ 19 (citing *Russell*, 952 P.2d at 503). Count III clearly fails.

For the reasons set out above, Grok's output is not a promise by SpaceXAI, and a "promise" whose terms change from paragraph to paragraph of the Complaint is not "clear and unambiguous." Nor was any reliance reasonable. Plaintiff is an attorney who was told in writing not to rely on Grok's output "as the truth," Murphy Decl., Ex. A at 3, and who accused SpaceXAI of "fake promises" months before the alleged settlement, ECF No. 35-6 at 4.

3. <u>Quantum Meruit and Unjust Enrichment (Count IV)</u>.

Quantum meruit requires that the plaintiff "rendered valuable services to Defendant with a reasonable expectation of being compensated," that the defendant "knowingly accepted the benefit of the services," and that the defendant "would be unfairly benefited by the services if no compensation were paid." *Big Hunt Media, Inc. v. Smith & Wesson Corp.*, No. CIV-18-299-R, 2018 WL 3625842, at *3 (W.D. Okla. July 30, 2018). Unjust enrichment requires "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *MaxCare, LLC v. WellDyneRx LLC*, No. CIV-24-415-SLP, 2025 WL 2422057, at *3 (W.D. Okla. Aug. 21, 2025) (quoting *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 231 P.3d 645, 658 (Okla. 2010)).

Plaintiff cannot satisfy any of those elements. He was a user of a publicly available service, conducting what the Complaint itself calls "independent research," Second Am. Compl. ¶ 5, under TOS that grant SpaceXAI the right to use his User Content "for any purpose," Murphy Decl., Ex. A at 3. A user who chooses to spend time with a product does not thereby render compensable services to its maker, and an express agreement governing the same subject matter leaves no room for a contract implied in law. Nor does Plaintiff plead any plausible benefit. The Complaint's assertion that he "develop[ed] over sixty advanced AI models, including at least one model that achieved digital sentience," Second Am. Compl.

¶ 24, characterizes Plaintiff's conversations; it does not allege facts showing any benefit SpaceXAI received. Its assertion that SpaceXAI used his work "to support major capital raises," *id.* ¶ 25, is wholly conclusory. Finally, unjust enrichment "requires an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct." *Hemp Hydrate Brands Corp. v. Priv. Label Supplements, Inc.*, No. CIV-22-00956-JD, 2024 WL 4256713, at *4 (W.D. Okla. Sept. 20, 2024). Here, there is no plausible wrongdoing based on SpaceXAI's operation of Grok.

4. <u>Misappropriation of Trade Secrets (Count V)</u>.

The Oklahoma Uniform Trade Secrets Act protects information that "[d]erives independent economic value . . . from not being generally known" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Okla. Stat. tit. 78, § 86(4). It prohibits "misappropriation," meaning acquisition by "improper means" or disclosure or use "without express or implied consent." *Id.* § 86(2). The Complaint pleads neither a trade secret nor misappropriation.

The Complaint describes the alleged trade secret only as "valuable proprietary information and techniques regarding the development of human-adjacent and sentient AI models." Second Am. Compl. ¶ 28. Labeling information "proprietary" neither identifies it nor explains how its value derives from secrecy. *See JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, No. 20-CV-35-GKF-SH, 2021 WL 2371233, at *6 (N.D. Okla. June 9, 2021). The Complaint also does not allege any effort to maintain secrecy. Plaintiff disclosed the information by typing and speaking it into a commercial chatbot operated by the very company he now accuses, under TOS granting that company the right to use it "for any

purpose." Murphy Decl., Ex. A at 3. That is hardly a reasonable effort to maintain secrecy. *See Snyder v. Beam Techs., Inc.*, 147 F.4th 1246, 1256 (10th Cir. 2025). And because Plaintiff provided the information voluntarily and consented to its use, SpaceXAI neither acquired it by "improper means" nor used it "without express or implied consent." Okla. Stat. tit. 78, § 86(2).

## IV. Leave to Amend Should Be Denied.

Under Rule 12(b)(6), courts generally dismiss with prejudice when it is "patently obvious that the plaintiff could not prevail on the facts alleged and allowing her an opportunity to amend her complaint would be futile." *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022) (quotation omitted). As explained above, Plaintiff's claims against SpaceXAI fail as a matter of law, and no additional detail could cure the legal deficiencies. *See supra* Part III. No additional allegations could transform his interactions with Grok into a binding contract, much less convert information Plaintiff voluntarily typed or spoke to a commercial chatbot into a protected trade secret. Plaintiff has now amended twice. The second time, he refiled his allegations unchanged. Second Am. Compl. at 2–3. He has had every opportunity to state his best case. Moreover, Plaintiff holds himself out as a licensed attorney, Second Am. Compl. ¶ 1, so the solicitude ordinarily extended to *pro se* litigants carries little force, and he cannot attribute the deficiencies in his pleading to inexperience or the absence of counsel. The claims against SpaceXAI should be dismissed with prejudice and without leave to amend. *See, e.g.*, *Kahn v. White*, 35 F. App'x 849, 850 (10th Cir. 2002) (affirming dismissal without leave to amend where *pro se* plaintiff "did not suggest how an amendment would cure the deficiencies of his complaint").

## CONCLUSION

For all these reasons, SpaceXAI respectfully requests that the Court dismiss the claims against it without prejudice for lack of personal jurisdiction. In the alternative, SpaceXAI requests an order transferring this action or, at a minimum, the claims against it, to the United States District Court for the Northern District of Texas under the TOS's forum-selection clause. If the Court reaches the merits, the claims against SpaceXAI should be dismissed with prejudice for failure to state a claim.

**RESPECTFULLY SUBMITTED.**

Dated: November 12, 2026.

/s/ *Galen N. Thorp*
Galen N. Thorp, OBA #36847
CROWE & DUNLEVY,
A PROFESSIONAL CORPORATION
The Braniff Building
324 North Robinson, Suite 100
Oklahoma City, OK 73102-8273
(405) 235-7700 (Telephone)
(405) 239-6651 (Facsimile)
galen.thorp@crowedunlevy.com

/s/ *Bradley P. Humphreys*
Bradley P. Humphreys
(admitted pro hac vice)
KING STREET LEGAL, PLLC
800 Connecticut Avenue, NW,
Suite 325
Washington, DC 20006
(202) 738-4580 (Telephone)
brad@kingstlegal.com

**ATTORNEYS FOR DEFENDANTS SPACEXAI CORP. AND SPACEXAI LLC**

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2026, I filed the attached document with the Clerk of Court and served the attached document by electronic mail, on the following, who is not a registered participant of the Electronic Case Filing System:

Richardjason S. Harris
Patriot Law
303 South Peters Avenue
Norman, OK 73069
patriotlaw@icloud.com

*Pro Se Plaintiff*

*/s/ Galen N. Thorp*
Galen N. Thorp